J. L. HILLYARD, *Appellee*, v. FRANKLIN BANCHOR, *Appellant.*

No. 17,214.

### SYLLABUS BY THE COURT.

1. QUIETING TITLE AGAINST MORTGAGEE—*Judgment Final When.* A judgment regularly rendered in an action against a mortgagee and others to quiet title, that the defendants therein "have no estate or interest in and to said premises, and that they be perpetually barred and enjoined from asserting any claim to said premises, or any part thereof, adverse to that of plaintiff" bars the lien of the mortgage.

2. —— *Presumption that Parties to Judgment are Living.* Where an action has been prosecuted to judgment in a court of competent jurisdiction by procedure regular upon the face of the record, it will be presumed that the parties thereto were living when the action was commenced and when the judgment was rendered. In the absence of proof to the contrary this presumption will prevail.

3. TITLE—*When Marketable.* Objections of the purchaser to the title to land as shown upon an abstract of title presented by the vendor are examined and the title is held to be marketable.

4. SALES—*Advance Payments—When Forfeited.* It is a general rule that a purchaser of land who has made an advance payment and then failed to fulfill his contract without default on the part of the vendor can not recover the amount so paid.

Appeal from Kearny district court. Opinion filed October 7, 1911. Modified.

## STATEMENT.

This action is to recover commissions claimed by the plaintiff, Hillyard, a real-estate agent and broker at Lakin, Kan., from Banchor, the defendant, landowner, of Boston, Mass., and also the amount of a payment advanced upon the contract for the purchaser, whose claim, if any, had been assigned to the plaintiff. Judgment was rendered for the amount of the advance payment, but the claim for commissions was not allowed. Both parties appealed.

Under date of October 19, 1907, soon after the land had been listed with the plaintiff, he concluded a written contract with F. M. White, purporting to sell it for $1500, $100 to be paid at once, $900 on delivery of deed and abstract showing good title and $500 in four years to be secured by mortgage on the land. The contract was between "J. L. Hillyard, agent," and White, as vendee. Without informing the defendant of this contract the plaintiff two days afterward mailed a letter to him, as follows:

"When you was here a short time ago you listed for sale a tract of land consisting of 78 a. near Hartland being lot 8 except 5 a. in the S. E. corner and 20 a. of the east side of lot 7 in sec. 15, T. 25, R. 37, for which you wanted $1100 offering terms on one-half. I can sell this on the following terms: $100 down, $500 upon rec't of deed and $500 in four yrs. at 6 % int. with the privilege of paying $100 or any multiple thereof at any time, this seems to me like a very fair offer as to terms, this man is willing to pay me for my trouble in getting this deal closed so it will make you your price net to you, please let me know at once whether you will approve of these terms as I am anxious to get my client some land."

Considerable correspondence followed, the material parts of which are given below, with dates. Letters sent by the plaintiff are designated P., those by the defendant D.

(D. Oct. 24.) "Yours of the 21st inst. at hand and I accept your offer of $1100 net me, $100 down, $500 on

receipt of deed and $500 in four years at 6 % with privilege of paying $100 or any multiple thereof, at any time, for my property . . . provided New York draft for $100 to my order, is sent immediately; purchaser to assume 1907 tax; 6 % interest to be payable semi-annually. . . . (Refers to telegram of acceptance.) . . . Please state in whose name to make deed, also names (wife's name) of parties to execute mortgage."

(P. Oct. 28.) "With this letter you will find enclosed a draft for $100 earnest money, as to the deed I do not know how my client wants it made or what his wife's name is but will find out as soon as possible and let you know, would like for you to send deed and mtg. to some bank here so it will be here so that I can look after getting it fixed up."

(D. Oct. 29.) "Please inform me immediately, name of grantee and full names (wife's name) and address of parties who are to sign note and mortgage. I am having papers prepared."

(D. Nov. 1.) (Acknowledges receipt of $100 from plaintiff.) "I wish you had given me the names of grantee and his wife. However, I have left these in blank and would like you to see that same are properly filled—in the deed, mortgage and note. . . . I have this day sent papers to the Kearny County Bank, D. H. Browne, Cash., of Lakin, Kan., which must be taken up on or before the 11th inst., or papers returned to me on that date.

"I never convey by any other form than under quitclaim deed, which is executed by myself and wife. If this deed is not accepted, the deal is off."

(P. Nov. 4.) "Your favor of Nov. 1 just rec'd in which you state you want to make a quitclaim deed. I don't know what my client will do about that but I will however do what I can to get him to take it, as to this being closed up by the 11th of this mo., I don't believe we can possibly get it around in that time. . . ."

(D. Nov. 8.) "I do not see why you have any doubt as to your client accepting quitclaim deed. He should not have any fear; the title is clear, as your attorney will learn upon investigation. I never convey by any other form than quitclaim deed. . . . I have in-

structed the bank to give you until the 20th inst. to close the deal."

(D. Nov. 26.)  "As I gave you until the 20th inst. to close up the deal and not having received remittance from the Kearny County Bank, I have this day notified said bank that unless a good and sufficient reason is given for the delay, to return to me immediately, all papers and draft for $100 plus the cost of protesting, same being forfeited.

"This matter should receive your immediate attention."

(P. Nov. 28.)  "Your title to the land that I have been trying to sell failed to pass.  I tried hard to get them to take it but failed, so I told Mr. Browne to send you all the papers.  I have been out considerable in expense and time in showing this land not knowing that the title was in such a shape. . . . . Please send the draft back that I sent you."

(D. Dec. 3.)  "I note your excuse on account of not completing the deal is that the 'title is bad.'  The title to this property is perfectly clear in the writer.  I had the same perfected some years ago through the office of Geo. J. Downer of Syracuse, Kan., who pronounces the title clear in the writer. . . .  What are the defects in the title?  Please enumerate same.  Also what is the name and address of the lawyer who examined the title?  I have a right to know.  Sale is now off."

(P. Dec. 12.)  "In ans. to your letter of Dec. 2 will say that I do not know the name of the attorney or examiner that examined the title for my client, after it had been turned down by my client I thought as the deal had gone so far that I would take it up myself if you had any title.  I had attorney A. R. Hetzer of Lakin, Kan., to examine it for me and he advised me that the title was n't safe to handle, there seems to be some old mortgage that has never been released, my attorney is out of town at present.  If you wish I will have him send you a statement of the requirements when he returns, and if you can meet these I will still buy this land, please send the draft back at once."

(D. Dec. 20.)  "You do not make a satisfactory explanation in claiming that my title is not clear. . . . You should obtain and send to me from your attorney

who examined the title, statements of what is required. It is up to you to do this, otherwise you are making a lame excuse."

(P. Dec. 24.) "I have your letter of the 20th inst., my attorney whom I referred to is away at present taking a holiday vacation, am expecting him home the 27th of this mo. at that time I will take the matter up with him in regard to the abstract of the Platter land, and ask him to send you the requirements which he still has in his office perhaps. . . . As you seem to think you had a good title or did not know the condition of the title there is perhaps no one to blame."

(D. Dec. 28.) "I note what you say in that 'No one to blame' on account of sale falling through.

"My price now is $1600 less 5 per cent commission. I have recently paid 1907 tax."

(P. Jan. 21.) "As I have not rec'd the $100 from you will take the liberty to write you once more in regard to it. . . . Hoping to get a draft from you on return mail. . . . I am."

(D. Jan. 24.) "You know full well that you have forfeited this money. I gave you more than customary time to complete the deal and at the last moment you declared that the title was defective, leaving me in the 'lurch.' . . . I have a letter from Messrs. Hetzer & Trinkle, of Lakin, alleging that three old mortgages not released. I am satisfied that these mortgages were cut out by foreclosure; and what is more, I subsequently quieted the same through the district court of Kearny, and some years ago, Mr. Geo. J. Downer of Syracuse, pronounced the title perfect in the writer. . . . I have sent the abstract and all old papers to the Hon. Wm. E. Hutchison of Garden City, who will pass on the title."

(Before receiving this letter the defendant had received a letter from plaintiff's attorneys stating their objections to the title.)

(P. Feb. 26.) "I received your letter some two or three weeks ago, stating that you had sent the abstract to the land in question to Garden City and you insinuated that you would report the decision. I don't know

that this decision makes any difference to me whatever. I still claim that you have $100 of my money."

(D. March 2.) "As I have written you before, you have forfeited this money and during the pendency of sale to you, I was prevented from selling the property to another party who was ready to pay all cash . . . and I respectfully refer you to Hon. Wm. E. Hutchison of Garden City, who has all papers." .

The plaintiff testified that White refused to take the land after examining the abstract on the ground that the title was defective. Mr. White testified that he executed the agreement to buy the land and sent a draft to the Lakin State Bank for the advance payment, payable to the order of the plaintiff, to be delivered if the title was good, but the draft was returned to him, as he directed, on being advised that the title was bad. The plaintiff sent another draft for the $100, which the defendant received and kept. The name of the vendee, who is referred to by the plaintiff in his letters as "my client," was never made known to the defendant.

*William Easton Hutchison,* and *C. E. Vance,* for the appellant.

*H. O. Trinkle,* and *A. R. Hetzer,* for the appellee.

The opinion of the court was delivered by

BENSON, J.: The plaintiff contends that the defendant's title is unmarketable, and that having shown this he has established his right to commissions, the sale having failed for that reason alone. The defendant insists that the title is good, and further contends that by withholding all information of the contract to sell for a sum largely exceeding the amount afterward reported to the owner, withholding the name of the purchaser, and making the statement that the purchaser would pay for his trouble, the agent was lacking in good faith, and forfeited all claims for commissions.

The first objection to the title and the one that the

plaintiff's counsel say is the most serious is that there is an unreleased mortgage given to Amelia W. Platter by Peter Platter, who owned the land when it was given, covering three or four acres of the tract. The land is situated in Kearny county and the mortgage was not refiled for record after the enactment of chapter 107 of the Laws of 1899. The effect of such an omission is referred to in *Gibson v. Uppenkamp,* 83 Kan. 74, 75, 109 Pac. 781, but its effect in this case need not be decided. The claim, interest and estate of the mortgagee was barred by a judgment in an action to quiet title rendered in due course of procedure in an action in the district court of the proper county brought by Banchor, the defendant here, against J. T. Pringle, Amelia W. Platter and others. The only objection made to this judgment is that by its terms it barred Amelia W. Platter from any "estate or interest" in the land, and not from any lien thereon. The argument is that a mortgagee has no estate in the land, as decided in *Chick and others v. Willetts,* 2 Kan. 384, and other decisions of this court, but only a lien upon it—a mere security. Decisions are cited holding that where this rule prevails a mortgage lien is not an interest in the property. The word "interest" when applied to property has a variable meaning to be determined in any case by the context, intention and circumstances. It may be used as synonymous with estate or title, or it may be used to denote something less than an estate or title. The meaning of this word, as used in an insurance policy was determined in *Garner v. Insurance Co.,* 73 Kan. 127, 84 Pac. 717. A clause in the policy provided for forfeiture in case of change (with some exceptions) in "the interest, title or possession" of the property insured. It was said:

"The word 'interest' as used in the policy is not synonymous with title. It means some right different from title. It can not mean a greater estate than title, since 'title' as there used was intended to mean the entire estate. It must therefore have been used with

the meaning generally attached to it, when used in contradistinction to title—as 'any right, in the nature of property, less than title.' (Anderson's Law Dict. 562.) 'In a narrower sense it was used in the English common law of real property to designate a right less than an estate.' (3 Cent. Dict. 3142.) This we think is the sense in which it was used in the policy." (p. 130.)

The judgment referred to, introduced in evidence, after reciting the findings, was as follows:

"It is therefore considered, ordered and adjudged by the court that the plaintiff's title to the above-described real estate is valid and perfect, and that the defendants, or either of them, have no right to any claim thereto, that they have no estate or interest in and to said premises, and that they be perpetually barred and enjoined from asserting any claim to said premises, or any part thereof, adverse to that of plaintiff."

Whatever meaning should be given to the word "interest" when standing alone in such a document, it is clear that the terms used in this judgment are sufficient to cover a mortgage lien.

The defendant argues that the judgment is broader than the petition, which only alleged that the defendant, Amelia W. Platter, claimed an adverse *estate* in the land, and that she could be barred of nothing else, but the abstract does not show the petition or that it was in evidence and no counter abstract was filed.

It is also contended that it is possible that Amelia W. Platter may have been dead when the action to quiet title was commenced. It has not hitherto been considered necessary that a party relying upon a judgment as evidence should produce proof that the parties thereto were living when the suit in which it was rendered was begun. When an action has been prosecuted to judgment in a court of competent jurisdiction by procedure regular upon the face of the record, it will be presumed that the parties thereto were living when the action was commenced. In the absence of proof to the contrary, this presumption will prevail.

Other objections to the title are overcome by the

effect of the judgment before referred to and by the fact that the grantors in the instruments which it is alleged cloud the title had previously conveyed the land by warranty deed to parties under whom the defendant holds title. As the land records disclosed these facts the later instruments conveyed nothing. (*Stark v. Chitwood*, 5 Kan. 141; *Hutchinson v. Harttmann*, 15 Kan. 133; *Douglass v. Nuzum*, 16 Kan. 515.)

It is true that a title need not always be bad in fact in order to be unmarketable. The question is whether a reasonably prudent man, familiar with the facts and apprised of the law, would accept it in the ordinary course of business. (*Williams v. Bricker*, 83 Kan. 53, 109 Pac. 998.) The objections to this title are of the character frequently shown upon abstracts of title which are overcome by facts also appearing upon the abstract, and are not such as to make the title unmarketable in the ordinary course of dealing in property of this character. It is possible that facts not appearing upon the records may overthrow a title apparently good, but in such a case it devolves on the party rejecting the title to show the defect. The constant approval of titles with irregularities such as are here presented and which are shown by the land records to be harmless or immaterial, demonstrates that they are marketable. A contrary ruling would uselessly hamper the free conveyance of land and be a cause of vexation and unrest.

The fact that the defendant offered a quitclaim deed instead of a warranty deed, if it should be conceded, as plaintiff insists, that a warranty deed ought to have been given, required him to make prompt objection upon that ground, but the plaintiff based his objections on the condition of the title and not on the form of the deed.

As the plaintiff did not produce a purchaser willing to take the land—the title being found sufficient—it was right to reject his claim for commission on that ground,

and it is not necessary to examine the other reasons urged by the defendant to support the decision.

The defendant, in his appeal, insists that having shown a good title and full performance on his part the advance payment should not be recovered against him, and that in this respect the judgment should be reversed. It will be noticed that in the correspondence the plaintiff referred to this $100, as earnest money, a term used to distinguish a payment made to bind the bargain on the sale of property. (3 Words & Ph. Jud. Def. p. 2302.) The contract of sale between the plaintiff and White, of which however the defendant was not informed, contained no express provision of forfeiture, but the defendant repeatedly claimed that the $100 would be his money if the other payments were not made. In *Ketchum v. Evertson*, (N. Y.) 13 Johns. 358, a recovery of $700, advanced on a contract to sell for a consideration of $6000, was sustained, the vendee having refused to make further payments. The court said:

"It would be an alarming doctrine, to hold, that the plaintiffs might violate the contract, and, because they chose to do so, make their own infraction of the agreement the basis of an action for money had and received. Every man who makes a bad bargain, and has advanced money upon it, would have the same right to recover it back that the plaintiffs have." (p. 364.)

In *Hansbrough v. Peck*, 72 U. S. 497, it was said:

"No rule in respect to the contract is better settled than this: That the party who has advanced money or done an act in part-performance of the agreement, and then stops short and refuses to proceed to its ultimate conclusion, the other party being ready and willing to proceed and fulfill all his stipulations according to the contract, will not be permitted to recover back what has thus been advanced or done." (p. 506.)

The general rule that a purchaser of land who has made an advance payment and then fails to fulfill the contract without the fault of the vendor can not recover the amount so paid has been variously stated and

generally observed. (*Downey v. Riggs,* 102 Iowa, 88, 70 N. W. 1091; *Lawrence v. Miller,* 86 N. Y. 131; *Hill v. Grosser,* 59 N. H. 513; *Estes v. Browning,* 11 Tex. 237; *M'Kinney v. Harvie,* 38 Minn. 18, 35 N. W. 668; *Grimes v. Goud,* [Maine, 1887] 10 Atl. 116.)

In *Frederick v. Birkett,* 37 Kan. 536, 15 Pac. 510, the purchaser of land having made one payment refused to accept a conveyance because of an alleged defect in the title, and sued to recover the advance payment; the title was made good before the commencement of the action and recovery was refused. Again, in *Roberts v. Yaw,* 62 Kan. 43, 61 Pac. 409, the purchaser of real estate under a bond for a deed having made an advance payment and then made default was foreclosed and a claim for the recovery of the advance payment was refused.

It has been held in some cases that notwithstanding the failure of the vendee to complete the payments the vendor should return the advance payment less any damages he may have suffered from the vendee's default. It has been so held where the contract had been abandoned or rescinded by consent of the party not in default, and in other cases where equity manifestly required it recovery of the payment has been allowed, as in cases of fraud, surprise, or other ground of equitable cognizance (*Phelps v. Brown,* 95 Cal. 572, 30 Pac. 774; see, also, *Glock v. Howard & Wilson Colony Co.,* 123 Cal. 1, 55 Pac. 713, 43 L. R. A. 199), but no countervailing equity appears here to relieve the purchaser from the consequences of his failure to complete the purchase.

The plaintiff attaches importance to the statement in the defendant's letter of December 3, that "the sale is off," and alleges that this was a rescission by him. It appears, however, that for a considerable time afterward he was inquiring what defects were claimed in the title and endeavoring to satisfy the plaintiff that it was good, and as late as January 24, 1908, notified him that the papers had been referred to an attorney

for an examination and report.    Manifestly if the plaintiff had then, or in any reasonable time, tendered payment, his default would have been excused.    (*Hudson v. Swift*, [N. Y.] 20 Johns. 24.)

'The court erred in rendering judgment for the plaintiff for the advance payment of $100.    It should be modified by entering judgment against the plaintiff on that claim and the cause is remanded with directions to modify the judgment accordingly.