[Civ. No. 4825. Second Appellate District, Division Two.—November 22, 1928.]

ANNIE BROWN, Appellant, v. HOMER E. SWEET, Respondent.

Lander W. Butterfield for Appellant.

Turnbull, Heffron & Kelley for Respondent.

KEETCH, J., *pro tem.*—In this case the plaintiff and appellant sought to recover the sum of $1,215, money had and received by the defendant, following his alleged failure to convey certain real estate. The trial court gave judgment for the defendant, and the appeal is from the judgment and order denying a motion for a new trial.

It is first urged by appellant that the evidence admitted over his objection. was so different in its general scope and meaning from the admissions and allegations of the answer as to amount to a failure of proof within the meaning of section 471 of the Code of Civil Procedure.

The complaint alleges: (1) That on or about the twenty-fourth day of July, 1921, defendant had received from the plaintiff the sum of $550, for which he agreed to convey sixty acres of land, situated in the Antelope Valley, Los Angeles County. (2) That on or about the twenty-second day of December, 1922, the defendant received the sum of $350, for which he agreed to convey to George Brown, the son of plaintiff, ten acres of land in the Antelope Valley. (3) That on or about the eighteenth day of January, 1923, the defendant received a Ford automobile of the value of $300, for which the latter agreed to convey to plaintiff six lots in the town of Lancaster, in the Antelope Valley, and to pay plaintiff the sum of $50 in cash. The complaint further alleges a total failure and refusal to convey the property. The answer admits the receipt of the $550, alleged in the first cause of action, but alleges that at the request of plaintiff defendant conveyed "other and different *lands*" to her in lieu of the sixty acres; that he received only $220, instead of the $350, as alleged in the second cause of action, and that "he conveyed all the *land* agreed to be conveyed"; and that as to the third cause of action he admits the receipt of the Ford automobile of the value of $300, but

alleges the payment of the $50 in cash to the plaintiff and the conveyance to the plaintiff "of six *lots* in the town of Lancaster." (Italics ours.)

Appellant, for the purposes of the appeal, waives the question as to the difference between the $350 paid, as alleged in her complaint, and the $220 alleged to have been received by the defendant. She also admits the payment of the $50 cash to her, the plaintiff. It is asserted, therefore, that the only issue under the pleadings when the case went to trial was whether or not the defendant had conveyed the land as alleged by him.

It appears from the evidence of Mrs. Brown that she was a nurse by profession and first met the defendant while nursing a relative of his. She became friendly with him and his family and as the result of his representations to her was induced to pay him the various admitted sums of money for the property in question. These transactions covered a period of more than three years, beginning in 1919. She never saw the property. "He was to show it to me often, but he never did," she testified. As to the character of the land, Mrs. Brown stated it was farming land "then," but that the defendant told her "there would be oil in it in a short time; they were expecting to get oil in it." In reference to taking "other land," as alleged in defendant's answer, in lieu of the sixty acres, she testified that she was to get fifteen *lots*. She said: "He [defendant] showed me a paper where there was an oil stack on it, and a man standing on it, and he said the land was to be right there and that was sure to be oil, sure." At the request of the defendant Mrs. Brown said she sold "forty *lots*" among her friends, for which she was to get a commission. In connection with the transfer of the automobile the plaintiff testified: "He wanted to give me land for the whole, but you see I needed some money as he had got it all from me. Q. Did he give you any land for it? A. What he told me was, he had ten acres in Lancaster that belonged to himself, and that he would give me six acres. I says: 'I need the money; you have to give me some money.' He says, 'I will give you this six acres of land and $50.00.' Q. That was for the automobile? A. For the automobile, and he says, 'I am going to put down a

well on that land and there will be nothing but you and I on half shares.' ''

The plaintiff testified that she frequently requested the defendant to give her a deed to the property, but that she received only promises. In a letter received in evidence the defendant, under date of January 9, 1920, wrote to the plaintiff: ''I am going to get your deed this month or just as soon as I can get papers made out, which will be right away. I am in hopes oil will be struck then you will be rich—here's hoping—if you can send me $50 for a short time it will be appreciated.'' In January, 1923, at the time she transferred the automobile to defendant, Mrs. Brown said she again asked him for deeds to the property and he said he would send them. Regarding that conversation, she testified: ''He wanted the receipts back for all the money that I had paid as he could not give me the deeds until I would give him the receipts. . . . I says, Why? He says: I have to show them you have the land paid before I can get the deeds.'' Plaintiff had no further communication or dealings with the defendant except through her attorneys.

Throughout the direct testimony of the plaintiff, and as far as is evidenced by the pleadings, the property to be conveyed was referred to as ''land,'' ''acres'' or ''lots,'' but upon cross-examination of plaintiff counsel for defendant revealed for the first time his contention that by the allegation in the answer that plaintiff agreed to take ''certain other lands'' was meant ''an undivided interest'' in other lands. Counsel for the plaintiff objected to the introduction of any such evidence upon the ground that it was not within the issues as framed by the pleadings. It was urged that the answer, while asserting the agreement to take certain other lands in lieu of the sixty acres, expressly admitted the obligation to convey ten lots under the second cause of action and six lots in exchange for the automobile. The court overruled the objection and admitted the evidence. Both parties to this appeal set out at some length the testimony of the plaintiff covering this point, and certain categorical questions and answers thereto give support to respondent's contention that an ''undivided interest'' was the basis of the agreement, while on the other hand, when taken on redirect examination, the plaintiff reiterated the statement that she was to receive fifteen ''lots.'' Counsel

for Mrs. Brown insists that her testimony, taken as a whole, indicates that she was confused over the term "undivided interest," and that the evidence was insufficient, aside from its inadmissibility. As to its insufficiency, however, we can only regard it as a conflict of testimony, which is peculiarly within the province of the trial court to decide and cannot be reviewed here. The fact that the court admitted this testimony and apparently based its findings upon it is the point presented by appellant that it was not within the issues as framed by the pleadings, and that "respondent's evidence was so different in its general scope and meaning from the allegations of his defense as to amount to a failure of proof within the meaning of section 471 of the Code of Civil Procedure." That section reads as follows: "What not deemed to be a variance. Where, however, the allegations of the claim *or defense* to which the proof is directed is unproved, not in some particular or particulars only, but in its general scope and meaning, it is not to be deemed a case of variance within the last two sections [469 and 470], but a failure of proof." (Italics ours.)

Upon the first cause of action the court found that the original agreement between the parties for the sixty acres had been canceled and in lieu thereof "the defendant Homer E. Sweet should and would convey to Annie Brown a 15/400 interest in and to said 40 acre tract of prospective oil land," and agreed with the defendant that said conveyance should be made at such time as Homer E. Sweet was in a position to obtain title to the said forty-acre tract. The court also found that prior to the commencement of the action the defendant made, executed, and delivered to the plaintiff a deed covering the 15/400 interest in said tract of land, and that the consideration for the $550 had been fully paid for by the conveyance of the property.

No testimony was given nor is any description of the land referred to in the finding of the court to be discovered anywhere in the record, except in the deed referred to as having been delivered by the defendant to the plaintiff and about which we shall have more to say later.

It is urged by appellant that respondent's sole defense to the first cause of action stated in the complaint was that he had conveyed "other and different lands" to plaintiff (referring to the substitution of other land for the sixty

acres), whereas the proof offered by defendant went to show a conveyance of "an undivided interest," or shares in land. This calls for a definition of what is ordinarily meant by the word "land."

 It may be regarded as elementary that the word "land" may and does include an estate or interest in the land. Indeed, as stated in *Fish* v. *Fowlie*, 58 Cal. 373, it "embraces all titles, legal or equitable, perfect or imperfect (*Leese* v. *Clark*, 20 Cal. 387), including such rights as lie in contract—those which are executory as well as those which are executed." But it has various meanings in the law as applied to the subject matter involved, and for this reason the use of the word should be interpreted in the light of its ordinary meaning as so employed. This is particularly true, it seems to us, in the matter of pleading, when the matters at issue are required to be set forth in "ordinary and concise language." It is a general rule that material matters must be distinctly stated, and may not be left to inference to be drawn from doubtful or obscure language (21 Cal. Jur. 42, citing *Campbell* v. *Jones*, 38 Cal. 507; *Moore* v. *Besse*, 30 Cal. 570, and *Stringer* v. *Davis*, 30 Cal. 318). In the case of *Wood* v. *Anderson et al.*, 199 Cal. 440 [249 Pac. 862], the court said: "Viewing the evidence in the light most favorable to the appellant, as we must do on appeal from a judgment of nonsuit, we are nevertheless confronted by the well established rule that a contract, particularly one for the conveyance of real property, will not be enforced by a court of equity unless it contains all the material terms and also expresses each in a *sufficiently definite manner* [citing authorities]." (Italics ours.)

 In view of this the question arises: Did the pleadings in the instant case, taken as a whole, indicate to the plaintiff the defense which she would be required to meet as one of the material issues, namely, an undivided interest in certain lands instead of the whole interest, as represented by the allegations of the complaint in terms of "lots," "acres" and "land"? We do not think so.

Title in fee to a lot, acre, or parcel of land carries with it the absolute dominion over it and the disposal of it. It is obvious that an undivided interest or limited estate in the land is a very different thing. "The land is one thing," says Plowden, "and the estate in the land is another thing,

for an estate in the land is a time in the land, or land for a time." In the case of *Hillyard* v. *Banchor*, 85 Kan. 516 [118 Pac. 67], the court said: "The word 'interest,' when applied to property, has a variable meaning to be determined in any case by the context, intention and circumstances. It may be used as synonymous with 'estate' or 'title,' or it may be used to denote something less than an estate or title." The meaning of this word as used in an insurance policy was determined in *Garner* v. *Milwaukee Mechanics' Ins. Co.*, 73 Kan. 127 [117 Am. St. Rep. 460, 9 Ann. Cas. 549, 4 L. R. A. (N. S.) 654, 84 Pac. 717]. A clause in the policy provided for forfeiture in case of change (with some exceptions) in "the interest, title or possession" of the property insured. It was said "The word 'interest' as used in the policy is not synonymous with title. It means some right different from title. It cannot mean a greater estate than title, since 'title' as there used was intended to mean the entire estate. It must therefore have been used with the meaning generally attached to it, when used in con- tradistinction to title—as 'any right, in the nature of prop- erty, less than title.' " In *McDonald* v. *Bayard Sav. Bank*, 123 Iowa, 413 [98 N. W. 1025], it is said: "An interest in land is the legal concern of a person in the thing or prop- erty, or in the right to some of the benefits or uses from which the property is inseparable." Applying these defini- tions to the instant case, it would seem that the plaintiff, having pleaded that she bargained for the whole of a lot or parcel of land and defendant's only answer thereto being that the agreement was to convey "certain other lands," counsel for plaintiff was entitled to assume, as he did, that according to the ordinary meaning of the language as thus used the only issue presented was as to certain other "lots," "acres" or "land" and the whole thereof, and not a part or undivided interest therein or something less than title to the whole. ■ In other words, the pleadings presented one thing as an issue for trial and the defendant tendered proof of another thing.

In *Gillin* v. *Hopkins*, 28 Cal. App. 582 [153 Pac. 725], where the defendant was sued for a specific amount of money and it appeared from the proof that he was to receive certain shares of stock by way of commission or the value of them, the court said: "The differences between the contract

as alleged in the complaint and the proofs adduced by plaintiffs are so pronounced as to bring the case within the rule announced in section 471, Code of Civil Procedure.'' Nor can the admissions of the plaintiff avail the defendant when such admissions are outside the pleadings as framed between the parties. As was said in *Hicks* v. *Murray,* 43 Cal. 515, 522: ''It has so often been determined that unless the facts essential to the support of the case be alleged upon the record, evidence upon such omitted facts cannot be heard or considered, that a citation of authority upon the point is unnecessary. Evidence of facts, or stipulations as to the facts of a case, cannot make the case broader than it appears by allegation, nor can a party by mere force of facts admitted or proven become entitled to relief to which he would not have been entitled had his case been resisted only by general demurrer interposed to the pleadings upon which he relies.'' If it were a fact that the plaintiff here agreed to accept an undivided interest instead of an absolute ownership in sixty acres, a plain allegation to that effect in the answer would have presented a plain issue and a valid defense. ▪ In *McCord* v. *Martin,* 47 Cal. App. 717, 723 [191 Pac. 89, 91], it was said that ''It is well settled by a long line of decisions in this state that the plaintiff must recover, if at all, upon the case made by the pleadings, and not upon a case which may be developed by the proofs''— citing *Kredo* v. *Phelps,* 145 Cal. 526 [78 Pac. 1044]. We do not understand the rule to be any different when applied to a defendant.

▪ In reference to the second cause of action the court finds that the defendant had received the sum of $220 ''as part of the purchase price of 20/100 part, towit, an undivided one-fifth interest in the Northwest quarter of the Southwest quarter of the Southwest quarter of Sect. Eighteen, Township Eight North, Range Eleven West, S. B. M., County of Los Angeles, State of California.'' It also finds that the sum of $220, ''together with the price of the automobile, less $50 cash,'' was the consideration for the one-fifth interest, and that the defendant executed and delivered a deed to the plaintiff ''but through an error the real description of the property was not correctly inserted in the deed, and that a new deed *has now* been executed by the defendant.'' (Our italics.) The complaint as to this

cause of action alleges that "the defendant agreed to convey to plaintiff's son, George Brown, ten acres of land in the said Antelope Valley." The defendant answered as follows: "This defendant admits that for the sum of $220 he was to convey and agreed to convey to the plaintiff certain real property, which property has been by him conveyed to the plaintiff. The defendant denies that he has refused to convey *the land,* or any land to the plaintiff, and alleges that all of *the land* agreed to be conveyed by the defendant to the plaintiff has been by him so conveyed." (Italics ours.) This is not a specific denial, or any denial, that he, the defendant, had agreed to convey ten acres of land, and failure to deny admits the allegation. Furthermore, we do not find any evidence whatever of any agreement on the part of Mrs. Brown or her son to purchase or accept "a 20/100 part, towit, an undivided one-fifth interest in" the land, as set forth in the finding of the court. Neither in the pleadings nor in the testimony admitted is there to be found any legal description of whatever property might have been the subject of the agreements between the parties, except as stated in the deeds in the possession of defendant himself and offered by him at the trial. Incidentally we may also say that we can find no evidence whatever in the record to justify the finding that the automobile was a part of the consideration for the alleged interest. The automobile transaction is covered by the third cause of action, and the plaintiff testified that she was to receive six acres of land for it. As far as we can ascertain from the record, the only basis for the finding of the court as to any of the undivided interests specifically mentioned in the findings comes from the deeds referred to and received in evidence over objection. The pleading was as to ten acres, in this cause of action. It would seem unnecessary to say that the deed, even assuming it admissible for any purpose, would not of itself be evidence of the agreement between the parties. As we see it, therefore, there was an entire failure of proof as contended for by the plaintiff under section 471 of the Code of Civil Procedure, and the finding was, as plaintiff contends, inconsistent with the admissions of the answer and the defense alleged.

In the third cause of action the plaintiff alleged that the defendant received from plaintiff "one Ford automobile

of the value of $300 for which the defendant agreed to convey to plaintiff *six lots* of land in the town of Lancaster, County of Los Angeles,'' etc. In answer to this the defendant alleged that ''he received of and from the plaintiff the Ford automobile referred to in plaintiff's complaint, for which he agreed to convey *six lots* in the town of Lancaster . . . and said lands have been conveyed to the plaintiff.'' In the face of these pleadings—after finding that the value of the automobile, namely, was part of the consideration for the alleged conveyance of the one-fifth interest described in the second cause of action, for which, as stated, we find no evidence in support—the court further finds: ''That there was no agreement between the plaintiff and the defendant by which the defendant agreed to convey to plaintiff said lots of land in the town of Lancaster, to wit, six lots of land, or any other agreement other than as herein found.'' Again we find the record entirely silent in support of any such conclusion. But even assuming there was something in the testimony of the parties to give support to that finding, it would be entirely contrary to and outside of the pleadings. If the conclusions we have reached in reference to the other causes of action are open to question, there can be none here. The agreement to convey six lots in the town of Lancaster is specifically pleaded, and the answer specifically admits the agreements to convey six lots in the town of Lancaster, and furthermore, that he had so conveyed. There was here no allegation of any other agreement in the pleadings as was suggested in the other causes of action. That the court found something entirely foreign to and outside the pleadings is here beyond question. ''It was error in the court to find in favor of the defendant referred to upon an allegation of the complaint which he did not deny.'' (*Tracy* v. *Craig,* 55 Cal. 91.) The only issue raised was whether or not the defendant had conveyed the six lots in the town of Lancaster, and the only evidence we find touching that issue—assuming for the moment its admissibility—is found in another deed offered by the defendant and received in evidence. This deed purports to convey to the plaintiff the following described property: ''The twenty one-hundredths (20/100) part, share, interest or quarter of the Northwest quarter $\frac{1}{4}$ of the Southwest ($\frac{1}{4}$) of the Southwest Quarter, Twn. Eight (8) North Range 11, West,

S. B. M. All in said County of Los Angeles," etc. It becomes apparent that this description was lacking in an important particular, namely, the number of the section, and the court allowed it to be amended to read section 18. ▉ In this particular it is pointed out by appellant that this court may take judicial cognizance of the fact that the land so described is not in the town of Lancaster. (*Fackler* v. *Wright*, 86 Cal. 210 [24 Pac. 996].) We take judicial notice, therefore, after consultation of maps, that the description as corrected places the land about three miles south and east of the town of Lancaster.

We have found it necessary to go into these matters at some length because of the record before us. We are of the opinion that the contention of appellant that there has been a total failure of proof within the general scope and meaning of section 471 must be sustained. It follows, therefore, that the findings must be disregarded. (*Hicks* v. *Murray, supra; Ortega* v. *Cordero*, 88 Cal. 224 [26 Pac. 80]; *Burnett* v. *Stearns*, 33 Cal. 469; *Gregory* v. *Nelson*, 41 Cal. 279.) In the case of *Schirmer* v. *Drexler*, 134 Cal. 134 [66 Pac. 180], cited by appellant, the court said: "The decree attempts to enforce the specific performance of a contract which is not only not set up in the complaint, but to which no reference is made anywhere in the pleadings. . . . Here the issues as made by the pleadings sustain no degree of kinship whatever to the findings and decree, and are, besides, in direct conflict with the allegations of the complaint. . . . If this kind of a judgment can be upheld on this kind of a record, then written pleadings are no longer necessary, and may well be dispensed with altogether."

Aside from the inadmissibility of the evidence under the pleadings, appellant contends that there was neither a delivery to nor an acceptance by the plaintiff of the deeds already referred to and which, as far as the record shows, afford the only evidence of the legal descriptions of the undivided interests set out by the court in its findings. That they were not accepted is evidenced by the fact that at the time of the trial they were in the possession of the defendant and offered by him. According to the testimony of Mrs. Brown, already referred to, it was in January, 1923, when she last requested the defendant to send her the deeds, but that he failed to do so, and suit for the return of the money

was filed May 23, 1923. There is some testimony given by the defendant on cross-examination, in answer to the question why he did not deliver the deed as promised, that "there were installments or monthly payments being made [presumably by him] which had to be completed before the deed could be executed," and that Mrs. Brown so understood it. Even assuming there is a conflict of evidence on this point as to the time of delivery, the fact remains that there was no acceptance by the plaintiff, the reasons for which would sufficiently appear from all the facts and circumstances to which we have called attention. It appears from the record that one of the deeds was recorded May 18, 1923, or five days before the filing of the action, and that the other was filed for record on June 1, 1923. These deeds were received by Mrs. Brown either through the mail or through her attorneys after they were recorded. Mr. Butterfield, counsel for Mrs. Brown, took the witness-stand and testified that one of the deeds was brought to him in August or September following the filing of suit, and that the other, recorded on the same day the answer was filed, June 1, was received through the mails from the recorder's office several weeks after the answer had been filed.

We already have had occasion to point out that one of the deeds when presented in court was found to be defective in the legal description of the property, and the court ruled that another deed with the correct description should be delivered to plaintiff. We have also noted that there is no evidence of the character, quantity or location of the land ascertainable from the pleadings or from the testimony of the parties, outside of the deeds themselves. The testimony of Mrs. Brown as to the location of the land she was to receive is decidedly hazy, with the exception of that with reference to the six lots, which she definitely stated were described to her as being in the town of Lancaster. The deed offered by the defendant to cover this transaction apparently gives the description of a piece of property which, as we have pointed out, is not within three miles of Lancaster. Upon this state of facts it is evident that there are none of the essential elements of definiteness and certainty as to the subject matter upon which a contract could be based, and it is therefore void for uncertainty. In *Wood v. Anderson, supra,* the court said: "Viewing the evidence

in this light the alleged contract falls far short of that degree of certainty which is essential to justify a court of equity in decreeing its specific performance. It is indefinite as to the land to be conveyed, the time, place, and conditions of payment of the purchase price, and, in fact, as to the amount of the purchase price itself. The question is not one of conflict between the testimony of the appellant and that of the respondent, but it is one of such uncertainty and indefiniteness in appellant's testimony concerning the terms and conditions of the alleged contract as would require the court to indulge in mere conjecture and speculation in order to arrive at the intent of the parties.'' This language is peculiarly applicable to the instant case.

█ If the contentions of the plaintiff are correct, she was justified in refusing to accept the deeds, first, upon the ground that they conveyed to her something entirely different from what she had agreed to take, and, second, that they were tendered after the action had been instituted. In *Wilcox* v. *Lattin*, 93 Cal. 595 [29 Pac. 228], it was held that "the tender of a deed by the defendants to the plaintiffs subsequent to the commencement of the action, even if such deed had been sufficient to transfer the title, did not revive the contract.'' Again, the mere recordation of the deed by the defendant and respondent was not a delivery. In a case in the supreme court of the United States (*Parmelee* v. *Simpson*, 5 Wall. 81, 18 L. Ed. 542), where it was held that the placing of a deed on record, the grantee being ignorant of its execution and not having authorized or given his assent to the record, did not operate as a delivery so as to give the grantee precedence over a mortgage executed between registration and a formal subsequent delivery, Mr. Justice Davis said: ''The placing of the deed on record was Barcy's own act and done without the assent of Simpson. Under this state of facts there was manifestly no delivery. Execution and registration of a deed and delivery of it to the register for that purpose, does not vest the title in the grantee.'' (1 Devlin on Deeds, sec. 291, p. 497.) Nor does the recording of a deed to such person constitute delivery without acceptance. In *Hibbard* v. *Smith*, 67 Cal. 547 [56 Am. Rep. 726, 4 Pac. 473, 8 Pac. 46], it was held that the delivery of a deed to a stranger for the benefit of the

grantee is deemed to be a constructive delivery only when his assent thereto or facts which authorize a presumption of such assent are shown. On page 557 the court said: "The statute (Civ. Code, sec. 1059) does not recognize a delivery as perfected until an assent is proved either by act or presumption. And when reliance is placed upon a presumptive assent, how can such presumptive assent be found to the delivery of a paper, until all the facts are known to the grantee?" In the instant case the deeds were returned to the defendant upon the advice of plaintiff's counsel. In *Rasmussen* v. *Stanfield*, 49 S. D. 120 [206 N. W. 475], the grantee named in the deed was advised by his attorney not to accept it. The deed was returned to the grantor. It was held that there had been no delivery and no acceptance. "A deed must be delivered before it becomes valid, and the court should so hold as a matter of law, that there was no deed where facts show no delivery. Acceptance is necessary to the validity of a deed." (*Brandenburg et al.* v. *Botner et al.*, 221 Ky. 7 [297 S. W. 702].)

Other grounds of appeal are presented by appellant, but in view of the conclusions we have reached it is not necessary to discuss them here. The motion for a new trial should have been granted.

Judgment reversed.

Craig, Acting P. J., and Thompson (Ira F.), J., concurred.