[S. F. No. 14383. In Bank.—May 24, 1933.]

In the Matter of the Estate of MAE PURDIE PITTS, Deceased. ROSINA M. D. JANSSEN, Appellant, v. DOROTHY MAE WEIL, as Executrix, etc., et al., Respondents.

Dunne, Dunne & Cook for Appellant.

Arnold C. Lackenbach, Lauder W. Hodges, Hartley F. Peart, Gus L. Baraty and Russell Shearer for Respondents.

THOMPSON, J.—This is an appeal from an order confirming a sale of property by the executrix of the last will and testament of Mae Purdie Pitts, and is prosecuted by Rosina M. D. Janssen, as creditor of the estate, which estate is insolvent. In order that we may understand the question involved we shall proceed at this point to set down the facts which give rise to the controversy. Union Terrace is a non-profit, co-operative corporation, organized for the purpose of creating and maintaining an apartment house in which each member of the corporation holds, under an agreement to be described later, an apartment. The articles of incorporation recite, among other purposes, as follows: " . . . each of said members to hold an apartment therein under a written instrument denominated a lease to be executed by said corporation upon the payment by each member of such corporation of the cost of said project as the value of his apartment bears thereto, to be held by him as long as his interest in said apartment is vested in him, but not beyond the term of the existence of the corporation, *conditioned upon his paying periodically such portion of the cost of maintaining said premises as the value of his apartment bears to the value of said premises, and performing such*

*other covenants as may be prescribed in said lease reason-*
*ably necessary to protect each member in the enjoyment of*
*his apartment, and of the portions of said premises for the*
*common use of all members."* No person can become a
member of the corporation except the owner of an apart-
ment, and then only upon vote of a majority of the board of
directors, which board is comprised of the members. In the
by-laws of the corporation a distinction is drawn between a
member and an owner in this, that the latter is described
as "the person or persons, other than a member, in whom
the interest of a former member in an apartment has be-
come vested by the voluntary act of such former member or
by operation of law". On April 1, 1922, Fred W. Pitts
and Mae Purdie Pitts, as joint tenants, executed one of
the instruments denominated a lease, whereby they became
entitled to apartment No. 26. There was a mortgage against
the apartment house representing a portion of the purchase
price, the proportionate share of which for the apartment
taken by them was $5,100. The lease recited that they
should and Pitts and his wife did sign three notes of $1700
each, bearing like interest as the mortgage, payable in one,
two and three years, and they also agreed to pay on the first
day of each quarter during the term their proportion of
the expense of maintaining and operating the apartment
house. Subsequently, Fred Pitts died and Mrs. Pitts, as
survivor, became the sole owner of the apartment. She
signed a new note for $5,100 covering the principal sum
of the three notes previously given, and on March 16, 1928,
a further note of $2,000, evidencing the balance of her share
of the expenses to that date. These two notes comprise the
major portion of the claim of $7,760.99, which was pre-
sented by the corporation to the executrix with a statement
that it was secured by decedent's interest in the apartment,
which claim so presented was allowed and approved. The
appellant herein is also a claimant, her claim in the sum
of $10,102.87 having been presented, allowed and approved.
The apartment was appraised in the sum of $12,500. The
executrix proceeded under the provisions of law relating to
the sale of real property as they then stood, and the respond-
ent Union Terrace bid the sum of $12,500 for the property,
claiming the right under section 1570 of the Code of Civil
Procedure to offset the amount of its claim against the pur-

chase price. The appellant objected to the confirmation of the sale upon the ultimate ground that the corporation had no lien upon the property involved. The sale was confirmed.

We must now set out another portion of the instrument denominated a lease in order to correctly present the problem. The parties described as lessee therein covenanted with the lessor as follows: "First: To pay to the lessor during the term hereby granted the rent as above provided, *and any other sums payable by the lessee to the lessor pursuant to any provision of this lease, and perform all the covenants of this lease on the lessee's part* to be performed and in case of the non-payment of any money so payable when due, punctual payment being hereby declared to be of the essence of this lease, or for breach of any of the lessee's covenants, the lessor may declare the lessee in default thereof, forfeit his membership in the lessor, whereupon all rights of the lessee hereunder shall cease and determine, and sell said apartment as agent of the lessee and out of the proceeds thereof pay the cost of said sale, including a reasonable charge for making said sale, and any money payable as aforesaid by the lessee to the lessor, and render the balance to the lessee; or the lessor may purchase the interest of the lessee by paying to the lessee the value of said apartment as established pursuant to the terms of this lease, after deducting any money payable as aforesaid by the lessee; or the lessor may at its option enter said apartment and let the same as agent of the lessee and after deducting the money payable as aforesaid by the lessee, including a reasonable charge for renting said apartment, render the excess to the lessee; or if while any rent or other sum for which the lessee is obligated by the terms of this lease remains due and unpaid, there shall be under-tenants of the lessee occupying said apartment, or any part thereof, the lessor shall be entitled to demand and receive from such under-tenants the amount of any money payable as aforesaid by the lessee, or so much thereof as the sum or sums due from time to time, or falling due by the lessee from such under-tenant will suffice to pay, and any such payment to the lessor by such under-tenants shall be reckoned a full and sufficient discharge of such under-tenant as between him and the lessee

to the extent of the amount so paid to the lessor as afore-said."

Section 1570 of the Code of Civil Procedure as it stood at the time of the order here in question read as follows:

"At any sale of lands upon which there is a mortgage or lien, the holder thereof may become the purchaser, and his receipt for the amount due him from the proceeds of the sale is a payment *pro tanto*.

"If the amount for which he purchased the property is insufficient to defray the expenses and discharge his mort-gage or lien, he must pay the court, or the clerk thereof, an amount sufficient to pay such expenses." It is interesting and perhaps somewhat helpful to note that when this sec-tion was carried over into section 791 of the Probate Code, the word "lands" was changed to "real property". The general question with which we are concerned is whether the respondent corporation had a lien on the property within the meaning of the quoted section.

It is somewhat difficult to correctly and equitably desig-nate the interest of the decedent in the apartment. How-ever, we can readily understand the purpose and intent of the twofold arrangement. In order to effect a co-operative plan whereby each member might, in effect, own his own apartment and yet be subject to such rules and regulations as a majority should deem wise and expedient, and also be subject to a sale of the entire property when two-thirds of the members should so vote, it was apparently deemed necessary to lodge title in an artificial person, the corpora-tion. But in order to pay common taxes, expenses and up-keep it was thought desirable to have an instrument which should bind each person to that covenant for the common good and protection of all members, and for the nonpayment of which the lease (or the instrument denominated a lease) was subject to forfeiture by the corporation, i. e., the other members. We entertain no doubt that the members as a corporation intended that the apartment of each other mem-ber should stand as security for the faithful performance of the covenants by such member, nor do we entertain any doubt that each member thought his apartment was so en-cumbered. But we are still confronted by the question of whether their intent is to be given effect and if so whether the property is of such a character that it was properly sold

as real property. Assuming the propriety of the latter for the time being, let us call to our aid, for the purpose of interpretation, the doctrine of the vendor's lien. It finds expression in this state in section 3046 of the Civil Code, which reads as follows: "One who sells real property has a vendor's lien thereon, independent of possession, for so much of the price as remains unpaid and unsecured otherwise than by the personal obligation of the buyer." As so codified the rule is unenlightening, but when we recall that the doctrine is much older than the code and had its origin in the principle of equity that a person who secures the estate of another ought not in conscience to be allowed to keep it and not pay the full purchase price (*Martin* v. *Becker*, 169 Cal. 301–315 [146 Pac. 665, Ann. Cas. 1916D, 171]), we appreciate perhaps more clearly the justice of respondent's position in the instant case. True it is that some courts have criticised the vendor's lien, on account of its possible secret character, but the original equitable reason remains as vigorous to-day as it was in the days of the Roman civil law, from which source the doctrine has descended to us by way of the chancery courts of the English system. Not entirely removed from the ancient doctrine is the following excerpt from the case of *Beckwith* v. *Sheldon*, 168 Cal. 742–747 [145 Pac. 97, Ann. Cas. 1916A, 963]: "With regard to that part of the judgment which declares a lien on the property of the company, we need only say that, under the well established principle of equity that that which ought to have been done will be deemed to have been done, it is held that where a party agrees to give a mortgage or lien on property, or imperfectly attempts to execute such mortgage or lien upon a valuable consideration received, a court of equity, upon a proper showing, will create a specific lien on the property intended to be hypothecated and enforce the same. (*Daggett* v. *Rankin*, 31 Cal. 327; *Racouillat* v. *Sansevain*, 32 Cal. 389; *Love* v. *Sierra etc. Co.*, 32 Cal. 653 [91 Am. Dec. 602]; *Remington* v. *Higgins*, 54 Cal. 623; *Peers* v. *McLaughlin*, 88 Cal. 297 [22 Am. St. Rep. 306, 26 Pac. 119]; *Higgins* v. *Manson*, 126 Cal. 470 [77 Am. St. Rep. 192, 58 Pac. 907]; *Hall* v. *Cayot*, 141 Cal. 18 [74 Pac. 299]; *Kreling* v. *Kreling*, 118 Cal. 413 [50 Pac. 546].)"

With these thoughts as a background we are compelled by a careful examination of the language of the

lease to conclude that the corporation retained a lien upon the property. The first alternative granted to the respondent lessor is that in case of the failure of the lessee to pay any sum "pursuant to any provision of" the lease, it "may declare the lessee in default thereof, forfeit his membership in the lessor, whereupon all rights of the lessee hereunder shall cease and determine and sell said apartment as agent of the lessee and out of the proceeds thereof pay the cost of said sale, including a reasonable charge for making said sale, and any money payable as aforesaid by the lessee to the lessor, and render the balance to the lessee". This is an unmistakable provision conferring a power of sale upon respondent in order that it may realize out of the property sufficient to make it—the other members of the corporation —whole. Any other result would be manifestly unjust to the other members, who would not only be compelled to pay decedent's share of the expense, but also to make up her share of the mortgage in order to protect their own apartments.

But appellant says the respondent is not seeking to follow the procedure or any of the alternatives specified in the agreement; that it is limited to one of the four ways there stated and should not be permitted to realize on its lien, if it has one, in the manner here attempted. The argument involves a fallacy in this: that respondent is not attempting and has not attempted to foreclose its lien. Let us assume an ordinary trust deed where the power of sale in the event of default is conferred upon the trustee, or a mortgage with power of sale, could it be seriously argued that the beneficiary in the one case, or the mortgagee in the other, would not be entitled to set off the amount of the note against the purchase price? The manner of foreclosure is not involved in the present action, but rather the question, which we have already answered, whether the respondent had a lien upon the property. It was held as long ago as 1873, in *Meyers* v. *Farquharson*, 46 Cal. 190, that a sale by a probate court was not in effect a foreclosure of the mortgage.

Passing now to the nature of the estate or interest of the decedent in the apartment, let us turn to another clause in the lease. It is there said: "In case at any time hereafter the lessor shall determine by the affirmative vote

of its board of directors expressed at a meeting duly called for the purpose, to sell the entire property of the lessor above described, then and in such event this lease shall become null and void at the time fixed by the lessor for the consummation of the sale of said property so as to enable the lessor to deliver good title to any purchaser thereof free, clear and discharged of any estate or interest therein. The interest of the lessee in the net proceeds of said sale shall be in the proportion that the value of his apartment bears to the value of the entire property of the lessor established pursuant to the terms of this lease.'' It will be remembered that the ''owner'' was designated as one who had acquired an apartment from a member by voluntary conveyance or by operation of law, but who had not been elected a member of the governing board of the corporation. It follows, therefore, both from the expressions of the lease as well as from the general situation, that the right to a proportional part of the sales price attached to the ownership of the interest created by the written instrument, and not to a membership in the corporation. Therefore the lessee not only had a leasehold interest, conditioned upon his payment of his proportion of the expenses of maintenance, but he had a right to have distributed to him upon the sale of the property his proper share of the sales price in such an event, and if a member as well as an owner, to a voice in the general management of the property. We are not concerned with the designation given to the instrument by which his rights were defined, but must look to the substance thereof. (*City and County of San Francisco* v. *Boyle,* 195 Cal. 426 [233 Pac. 965]; *Mahoney* v. *City and County of San Francisco,* 201 Cal. 248–258 [257 Pac. 49].) When we do it is quite apparent that the respondent was vested with a valuable interest in real property. While the corporation held the legal title, yet, to all intents and purposes, the entire equitable estate was distributed proportionately among the owners of the apartments. It is unnecessary to assign a name to the interest thus created. It is sufficient for the purposes of this case to conclude that the ownership of the apartment constituted an interest in real property.

We have already called attention to the fact that the word ''lands'' in section 1570 of the Code of Civil Pro-

cedure was changed to "real property" when the section was incorporated in the Probate Code. This change more clearly expressed the meaning of the section as it existed before. It is said in *Brown* v. *Sweet*, 95 Cal. App. 117 [272 Pac. 614] : "It may be regarded as elementary that the word 'land' may and does include an estate or interest in the land. Indeed, as stated in *Fish* v. *Fowlie*, 58 Cal. 373, it 'embraces all titles, legal or equitable, perfect or imperfect (*Leese* v. *Clark*, 20 Cal. 387), including such rights as lie in contract—those which are executory as well as those which are executed.' " (See, also, *Austin* v. *American Surety Co.*, 118 Cal. App. 68 [4 Pac. (2d) 577].) It is manifest that the interest of decedent was real property within the intent of the section of the code.

Order affirmed.

Langdon, J., Preston, J., Shenk, J., Curtis, J., Seawell, J., and Spence, J., *pro tem.*, concurred.