[Sac. No. 429. Department One.—June 25, 1898.]

## R. C. BRODER et al., Appellants, *v.* A. R. CONKLIN et al., Respondents.

INSOLVENCY—PUBLIC SALE OF ASSETS—PURCHASE BY ASSIGNEE'S ATTORNEY—TRUST FOR CREDITORS—CONFLICTING EVIDENCE.—Where the assignee of an insolvent debtor sold the property of the insolvent in bulk at public sale to his attorney, and the creditors sought by bill in equity to establish both an express and a constructive trust on the part of the purchaser for their benefit, and the evidence in the action was conflict-ing as to the existence of an express trust, the purchaser testifying to the contrary, the finding of fact that there was no express trust cannot be disturbed upon appeal for insufficiency of the evidence to support it, though the evidence may appear to preponderate against the truth of the finding. The question of substantial conflict is in no way depend-ent upon the greater number of witnesses on one side, and the limit-ed number upon the other.

ID.—CONSTRUCTIVE TRUST—CONFIDENTIAL RELATION.—The creditors of the estate of the insolvent were beneficiaries of the trust fund in the hands of the assignee, who was the trustee, and the attorney of the trustee, as his agent, occupied the same confidential relation to the creditors as the assignee, and neither of them could purchase the property for himself, unless permitted to do so by all of the creditors, with full capacity of each to contract, and with full knowl-edge by each of the motives of the purchaser in making the pur-chase, and of all other facts concerning the transaction which might affect their decision, and without the use of any influence exerted upon them by him; and in the absence of proof of such a state of facts, in respect to every creditor, the sale to the attorney for the assignee was void as to the creditors, and a constructive trust in their favor was fastened upon the property by operation of law.

ID.—STATUTE OF LIMITATIONS.—The statute of limitations does not begin to run against an express trust until repudiation thereof is brought to the knowledge of the beneficiary; but it begins to run against the enforcement of a constructive trust from the date of its in-ception; and it appearing that the constructive trust established by

the evidence was created by the purchase of the property of the in-
solvent debtor by the attorney for the assignee some seven years
prior to the commencement of the action, its enforcement by the
creditors is barred by the statute of limitations.

APPEAL from a judgment of the Superior Court of Mono
County and from an order denying a new trial.  W. H. Virden,
Judge.

The facts are stated in the opinion of the court.

Richard S. Miner, Henley & Costello, and Thornton &
Merzbach, for Appellants.

E. S. Pillsbury, J. C. Campbell, W. H. Metson, and P. Reddy,
for Respondents.

GAROUTTE, J.—Greenly, assignee of Broder, an insolvent
debtor, sold at public sale, in bulk, the property of the insol-
vent, consisting of a large amount of realty and personalty, to
A. R. Conklin, the attorney for the assignee.  The creditors,
by a bill in equity, now seek a judicial decree to the effect that
the property purchased by Conklin at the sale be held in trust
by him for their benefit.  The relief sought is based upon the
claim of the existence of a trust relation between Conklin and
the creditors, and they rely both upon an express trust and a
constructive trust.  At the trial a vast amount of evidence was
taken to support and overthrow these respective positions.
And, as a result, the creditors were defeated all along the line,
the trial court finding the facts against them.  This appeal is
now prosecuted from the judgment and order denying their
motion for a new trial.

Counsel for appellants declare their main contention to be
that the evidence is insufficient to sustain the findings of fact
made by the trial court.  And to the consideration of this
question, as bearing upon the existence of an express trust, this
court will first address itself.  Conklin was an attorney at law
and attorney for the assignee.  It is claimed by appellants that
prior to the time set for the sale he entered into an express
understanding and agreement with them to the effect that he

would purchase the property at the sale, for their benefit, take possession of and manage the same to their interest, and eventually satisfy their claims from the proceeds thereof. It is conceded that the trust agreement relied upon arose in parol, but it is contended that a part performance thereof relieved it from the effect of the statute of frauds. There is evidence to support these contentions, and findings of fact to that effect would not have been disturbed by this court. It may be said that the evidence proponderates that way. Still, conceding all this, it does not follow that the finding of fact to the contrary should be set aside. Notwithstanding the evidence, as it appears to us, may preponderate against the truth of the finding, still a preponderance of evidence is not inconsistent with the existence of a substantial conflict in the evidence. It is said in *Grant v. McPherson,* 104 Cal. 167: "Upon a question of the character here presented this court cannot say that the evidence of two witnesses or of three witnesses must as to certain facts overthrow the evidence of one witness testifying to a contrary state of facts." Indeed the trial court is not bound to decide in accordance with the testimony of the greater number of witnesses. The question here presented is, Does this evidence present a substantial conflict as to the fact? And the question as to the presence of a substantial conflict is in no way dependant upon a great number of witnesses upon the one side, and a limited number upon the other, for it often occurs that one shall prevail against the many. The defendant Conklin was a witness in his own behalf, and the all-important witness to disprove the charges made by the creditors. He testified directly and positively that no sort or semblance of an agreement or understanding was ever entered into by him with the creditors to purchase the property for their benefit. But that, upon the contrary, he purchased the property openly and avowedly, for his own personal benefit alone. As indicated by the findings of fact, the trial court believed his statements of these matters and disbelieved all of the evidence contradictory thereto; and to get at the truth in the light of this contradictory evidence was essentially the duty of the trial court. As to the rule in such cases, it is said in *Grant v. McPherson, supra:* "Evidently his testimony was believed by the jury and by the court, and,

under the circumstances here presented, we are not at liberty to cast it aside. A wall of adjudication to this effect has been raised up by this court which we have no desire to pass over or batter down, for the wisdom of the rule declared in those adjudications cannot be gainsaid."

A constructive trust arises by operation of law from the relation of the parties coupled with the transaction had. Is such a trust disclosed by this record? Conklin was attorney for Broder, the insolvent, and also attorney for Greenly, the assignee. But it becomes unnecessary to consider the relative relations existing between the insolvent and the assignee, or the legal propriety of one person acting as attorney for both insolvent and assignee. This is so because Broder received his final discharge in insolvency May 13, 1879, and at once Conklin's employment as his attorney ceased. The sale of the estate did not take place until the month of June. Hence, at that time Conklin was not an attorney for the insolvent, for there was no insolvent. But the serious objection to the validity of the sale still remains, for upon the day of sale Conklin was attorney for the assignee, and the assignee was a trustee for the creditors. Under such circumstances it was a very delicate matter for Conklin to deal with this property for his own individual ends. Acting in his own interest he would buy the property at the lowest possible figure, while, acting for the creditors' interest, he should sell the property at the highest possible figure. And a trustee should not place himself in a position where his duty is to be performed under such serious temptation. An assignee or his solicitor is denied the right of buying the estate of the bankrupt, save in most exceptional cases. And the reasons upon which this most wholesome doctrine is laid may be found convincingly stated in the very early cases of *Ex parte Bennett,* 10 Ves. 381, and *Ex parte James,* 8 Ves. 337. At the same time, under certain conditions, the trustee may deal with the trust property to his own benefit, and those conditions are declared by section 2230 of the Civil Code of this state which provides: "Neither the trustee nor any of his agents may take part in any transaction concerning the trust, in which he or any one for whom he acts as agent has an interest, present or contingent, adverse to that of his bene-

ficiary, except as follows: 1. When the beneficiary, having ca-
pacity to contract, with a full knowledge of the motives of the
trustee and of all other facts concerning the transaction which
might affect his own decision, and without the use of any in-
fluence on the part of the trustee, permits him to do so." This
principle declared by the code is but a perfect echo of the common
law. It is said in Sugden on Vendors, *895, that to sup-
port such a sale "it must clearly appear that the purchaser at
the time of the purchase had shaken off his confidential character
by the consent of the *cestui que trust*, freely given, after full
information and bargaining for the right to purchase."

Tested by this principle of law, was Conklin, under the facts
disclosed by the record, authorized to buy this property at the
sale? And, in considering this question, it must be borne in
mind that there are no presumptions in favor of the action
of a trustee where he deals with the property of his beneficiary.
The presumptions are against him, and the burden of proof is
upon him. The trial court found the value of the property
at the time of the sale to be five thousand dollars, and that
Conklin, being the highest bidder, purchased it for two thou-
sand five hundred dollars. It was also found that the sale
was a public sale, made after due notice. But we attach no
importance to the fact that the attorney bought the property at
one-half its value. The principle which condemns the · sale
does not depend upon the presence of that fact. It covers much
broader and deeper ground. Neither does the fact that the
sale was made at public auction after full notice relieve the
attorney of a single responsibility laid upon him in equity by
reason of his confidential relations to the parties. The success
of his venture depends upon no such principle. The fact that
the sale was public can hardly be considered even a trifling cir-
cumstance in his favor. It is said in Story's Equity Jurispru-
dence, volume 1, section 322: "So that, in fact, in all cases where
a purchase has been made by a trustee on his own account of
the estate of his *cestui que trust*, although sold at public auc-
tion, it is the option of the *cestui que trust* to set aside the sale,
whether *bona fide* made or not. . . . . And this doctrine ap-
plies not only to trustees strictly so called, but to other persons
standing in like situations, such as assignees and solicitors of

a bankrupt or insolvent estate, who are never permitted to become purchasers at the sale of the bankrupt or insolvent estate."

Every creditor of the insolvent had a direct interest in the estate. He was a beneficiary of the trust fund; the assignee was the trustee, and the attorney was the agent of the assignee. The attorney occupies the same confidential relation to the creditors as the assignee, and in equity should be weighed and measured in the same scales. (*Burke v. Bours,* 92 Cal. 108.) Neither could purchase for himself unless coming within the exception declared by subdivision 1 of section 2230 of the Civil Code. Standing alone, a mere naked purchase by the attorney of the assignee from the assignee was *prima facie* void, and the burden rested upon him of showing its validity by competent evidence. The character of evidence necessary to accomplish that result is declared in subdivision 1 of the aforesaid section of the code. It is to this effect: The evidence should show that the creditors had the capacity to contract, that they had a full knowledge of the motives of Conklin in making the purchase, a full knowledge of all the other facts concerning the transaction which might affect their decision, and that without the use of any influence exerted upon them by him they permitted him to make the purchase. The findings of the trial court do not disclose such a state of facts, and, if those findings did disclose such a state of facts, the evidence to support them is wanting in the record. It is argued by respondent that these facts existed as to some of the creditors, and that existing as to some they existed as to all. In other words, it is contended that notice to and consent and knowledge of one creditor is notice to and consent and knowledge of all creditors. No authority is cited to support this position, and we know of none. The proposition stamps itself as unsound. Every creditor was a separate and distinct beneficiary of the trust estate. The assignee was a trustee for each and every creditor. No creditor had the authority to bind any other creditor. A majority of the creditors, upon a proposition such as here involved, could not bind the minority. As to any acts looking toward the validation of this sale every creditor stood alone, and his rights could not be bartered away by any number of the remaining creditors. We conclude that the sale was void as to the credit-

ors, and, that being void, a constructive trust in their favor was fastened upon the property by operation of law.

If this action is not barred by the statute of limitations, upon the facts disclosed by the record the creditors are entitled to the relief sought. The trial court found that the statute had run against it; and to that question our attention will be directed. By the bill the creditors relied upon both an express and a constructive trust. They alleged a repudiation of the express trust by Conklin in 1884, and brought this action shortly thereafter. If they had established by the evidence the existence of an express trust and a repudiation of it at the time alleged, clearly their cause of action upon that line of attack would not have been barred. But unfortunately for them, the trial court found against their contention as to the existence of any such trust, and, as already stated, we will not disturb that finding of fact.

In considering the statute of limitations in connection with the constructive trust, we find this action to have been brought some seven years after Conklin bought the property at the assignee's sale. It is therefore immaterial whether the three year or four year statute of limitations is applicable to the case. For if the action is barred at all it is barred under either contingency. No repudiation of a constructive trust by the trustee is required in order to set the statute of limitations in motion. A cause of action is created in favor of the beneficiary at the very moment the law creates the trust. In *Howell v. Howell,* 15 Wis. 55, the court, in speaking as to a constructive trust, declared: "The trust in such cases originates in a fraud, which is in itself as complete and absolute a denial of the rights of the injured party as it is possible to have, and every day which passes without reparation of the injury is a continuation or repetition of it. William Howell might have commenced his action the moment the land was purchased, and consequently it was barred before his death." Without further discussion it may be said that at the present day the law is settled upon this question. The statute of limitations begins to run the moment the trustee violates his duty and makes the purchase. (Perry on Trusts, sec. 865; *Haynie v. Hall,* 5 Humph. 290; 42 Am. Dec. 427; *Wilmerding v. Russ,* 33 Conn. 67; *Kennedy v. Baker,* 59

Tex. 150; *Hecht v. Slaney*, 72 Cal. 363; *Nougues v. Newlands*, 118 Cal. 102.)   The present action not having been brought for seven years after the cause of action accrued was barred by the statute of limitations.   Having arrived at this conclusion, we deem it unnecessary to consider the many assignments of error relied upon by the appellants in the matter of the admission and exclusion of evidence at the trial, and other rulings upon preliminary questions.

For the foregoing reasons the judgment and order are affirmed.

Van Fleet, J., and Harrison, J., concurred.

Hearing in Bank denied.