[Civ. No. 1122. Fifth Dist. June 24, 1970.]

EDWARDS-TOWN, INC., Plaintiff,
Cross-defendant and Appellant, v.
KENNETH A. DIMIN et al., Defendants,
Cross-complainants and Appellants.

## COUNSEL

Palmer, Anderson & Stronge, Morris E. Cohn and Nossaman, Waters, Scott, Krueger & Riordan for Plaintiff, Cross-defendant and Appellant.

DiGiorgio, Davis, Hastin & Klein, DiGiorgio, Davis, Nairn, Hastin & Klein and Thomas R. Davis for Defendants, Cross-complainants and Appellants.

## OPINION

**STONE, P. J.**—Edwards-Town, Inc., appeals from a judgment predicated upon an agreement to which it was not a party relating to the sale and development of two parcels of real property in Kern County. The agreement was between respondents Kenneth A. Dimin and Peter S. Manuele, as sellers, and Paulson Incorporated, as buyer. Dimin and Manuele have also appealed upon the ground of inadequate damages. The facts are these:

On January 27, 1959, Dimin and Manuele purchased 600 acres of land in section 9, hereinafter referred to as "Parcel I," from Kenneth and Arthur Wilson. They paid $1,000 down on the purchase price of $180,000, and executed a promissory note for $179,000 payable in annual installments on account of principal and interest. The note was secured by a deed of trust covering the property, with a provision for the release of 2½-acre parcels upon payment of $750 per parcel. On January 23, 1959, Dimin and Manuele entered into an agreement to purchase the north half

of section 8, hereinafter referred to as "Parcel II," from one Cora Halbert for $96,000; payment agreed upon was $18,200 upon close of the escrow, balance evidenced by a promissory note secured by a deed of trust covering the property, with a provision for release of 2½-acre parcels upon payment of $750 for each parcel. Dimin and Manuele deposited $1,000 in escrow to bind the agreement, pending conclusion of the escrow.

Dimin was a real estate broker, Manuele a real estate salesman, and both were familiar with land in the area. They purchased the two parcels for the purpose of subdividing and selling 2½-acre desert homesites. In the early part of May they worked out a transaction with promoters Henzeloff and McLeod, who agreed to form a corporation, Paulson Incorporated, to develop and subdivide the property. On May 5, 1959, Dimin and Manuele deeded Parcel I, subject to the purchase deed of trust in favor of the Wilsons, to the corporation, and also assigned their interest in the Halbert escrow covering Parcel II. These transfers were made pursuant to an agreement of sale between Dimin and Manuele, as sellers, and Paulson Incorporated, as buyer.

On May 19, 1959, Paulson Incorporated addressed a letter, which was also signed by Dimin and Manuele beneath the words "Accepted and Approved," to the Division of Real Estate warranting that there were no blanket or secret liens against Parcel I.

Paulson Incorporated attempted to sell 2½-acre lots for a period of four months, expending some $9,500 in subdivision costs, without success. McLeod, who with Henzeloff negotiated the incorporation of Paulson Incorporated, obtained advances from his friend, Dr. A. J. Ridley, to meet the costs of the subdivision development. From the record it appears that Dr. Ridley was not a director of the corporation, although without his knowledge McLeod and Henzeloff had named him an officer at the time of the incorporation.

When the first payment on the Wilson deed of trust covering Parcel I, in the sum of $7,500, became due on August 15, 1959, Paulson Incorporated could not make the payment and the Wilsons recorded a notice of default and election to sell on September 14, 1959. Dimin and Manuele were notified of the default and that the notice would be recorded. When Dr. Ridley received notice that the Wilson deed of trust was in default, and that notice of default and election to sell had been filed, he notified Paulson Incorporated that he would have to take action to protect his advances totaling $20,000, evidenced by two promissory notes. The directors replied that it would be unnecessary for him to commence action as the corporation would deed its interest in the property to him in consideration of the prior advances. On September 23, 1959, Paulson Incor-

porated conveyed the property to Ridley by a separate corporation grant deed, absolute on its face, for each parcel.

To help Ridley "recoup" his $20,000, McLeod attempted to sell the property to several persons, and finally interested Nathaniel K. Mendelsohn, president of Edwards-Town, Inc., in the property. McLeod delivered to Mendelsohn the records of Paulson Incorporated relating to its purchase of the property, including the basic agreement of May 5, 1959, and copy of the letter to the Division of Real Estate containing the warranty of Dimin and Manuele that they had sold all of their right, title and interest in Parcel I to Paulson Incorporated. Mendelsohn's attorneys gave him their opinion that the May 5 agreement between Dimin and Manuele, as sellers, and Paulson Incorporated, as buyer, was "a best efforts" contract only, that Dimin and Manuele had parted with merchantable title to the property and were creditors only, and that Edwards-Town was free to purchase the property from Ridley. Thereafter, Dimin and Manuele and their then attorney met with Mr. Mendelsohn to discuss the pending purchase of the land from Ridley. They advised him that the deed from Paulson Incorporated to Ridley was fraudulent as to creditors, that he had knowledge the property had not been paid for and of the terms of sale so that Edwards-Town could not be a bona fide purchaser. They added that should Edwards-Town purchase from Ridley, Dimin and Manuele would hold the corporation to the terms of the agreement of sale. Subsequently, on November 10, Ridley and his wife, by grant deed, transferred both parcels of property to Edwards-Town, Inc.

This action was commenced by Edwards-Town to quiet title against Paulson Incorporated, its directors and officers individually, and against Dimin and Manuele, who cross-complained against Edwards-Town, Inc., seeking damages under the original agreement with Paulson Incorporated. A judgment was entered in favor of Dimin and Manuele and against Edwards-Town, Inc. on the cross-complaint, for the amount the court found due under the terms of the May 5, 1959, agreement between Dimin and Manuele and Paulson Incorporated. Judgment was also entered against Paulson Incorporated and certain individuals with whom we are not concerned, as only the appeal of Edwards-Town, Inc., from the judgment against that corporation, and the counterappeal of Dimin and Manuele for increased damages, are before us.

The foundational proposition upon which this opinion rests is that, insofar as the rights of Dimin and Manuele are concerned, Edwards-Town was not a bona fide purchaser since its president and its attorney were fully cognizant of the circumstances surrounding the sale of the property to Paulson Incorporated.

A separate judgment was entered as to each parcel and we first take up the judgment for $32,000 as to Parcel II. This 320-acre parcel had not been subdivided at the time of trial, and since the agreement of sale provided that, in such an event, the price would be $100 per acre, the trial court entered a judgment accordingly for $32,000. The basis for the judgment was a vendor's lien for the agreed sale price. Civil Code section 3046 provides: "One who sells real property has a vendor's lien thereon, independent of possession, for so much of the price as remains unpaid and unsecured otherwise than by the personal obligation of the buyer."

█ A vendor's lien arises at the time of sale and the transfer of legal title, if full consideration is not paid, and if the vendor has not taken other security. (*Estate of Pitts*, 218 Cal. 184, 189 [22 P.2d 694]; California Land Security and Development (Cont. Ed. Bar, 1960) § 3.8, p. 76.)

█ The fact that there is a contract of sale does not defeat a vendor's lien; in fact, the lien can be created by express contract. (*Barron-Gray Packing Co.* v. *Tapley,* 78 Cal.App.2d 432 [177 P.2d 776]; 1 Witkin, Summary of Cal. Law (1960) Security Transaction in Real Property, p. 707.) ██ Appellant directs our attention to various authorities holding that a vendor may waive his lien if he manifests an intent not to rely thereon. (*McGreevy* v. *Constitution Life Ins. Co.,* 238 Cal.App.2d 364, 369 [47 Cal.Rptr. 711].) But such a waiver is not lightly given. The Supreme Court said in *Finnell* v. *Finnell,* 156 Cal. 589, 594-595 [105 P. 740]: "But the lien is presumed to exist and is an incident of the transaction of sale in all cases unless the intention of the vendor that it *shall not exist* be clearly manifested by his acts or declarations, and the burden of proof is on the vendee or his successors to show such intention. [Citations.] The act manifesting such an intention must be one substantially inconsistent with the continued existence of the lien and cannot be inferred from the mere fact that the parties may not have contemplated the assertion of the lien in the first instance. [Citation.]"

█ The trial court found that appellant failed to meet the burden of showing an intent to waive a vendor's lien as to Parcel II. The evidence upon which both sides rely is the agreement of sale, and when we examine it, the language supports the finding of the trial court. The introductory paragraph of the agreement reads: "Sellers hereby sell to Buyer and Buyer hereby purchases from Sellers, subject to the conditions hereinafter set forth, . . . " One of the conditions was that Parcel II, if not subdivided, would be paid for by the buyers at a sum equal to $100 an acre for the 320 acres. Rather than a waiver of a seller's lien, this provision fixed the sale price and the buyers agreed to pay it. It is consonant with a vendor's lien rather than expressing an intention to waive it. Counsel for Edwards-Town and its president read the agreement. They also knew

the property had not been subdivided and that the seller had not been paid. In the circumstances, we think the court properly found a valid vendor's lien as to a subsequent purchaser *with* notice.

One more thing need be said about the $32,000 judgment as to Parcel II. An action in equity to foreclose a vendor's lien merely establishes the lien. The vendor is said to have an equity until his right is established by suit. But here, as the trial court noted, in early proceedings the parties stipulated without prejudice to the rights of any of them that a judgment, if obtained, would be for money rather than for a lien against the property. This stipulation was arrived at to eliminate the cloud of lis pendens. Pursuant to the stipulation, the court gave a money judgment for the amount that would have become a vendor's lien judgment against the property.

Parcel No. I presents a different problem in that it was subdivided in 2½-acre lots, and at the time of trial all but one lot had been sold. The contract provided: "The sales price of said Parcel I to be paid to Sellers, shall be 16⅔% of the gross sales price of all parcels contained in said Parcel I." It also provided that no parcel should be sold for less than $2,500 without prior written approval of the sellers. The sales arrangements of the subdivision lots were further implemented in the agreement by the provision that, "The parties shall open a joint control bank account for each of said Parcels I and II upon receipt of the first payment on account of the sale of a parcel contained therein. All payments received on account of sale of parcels contained in Parcels I and II, with the exception of down payments shall be deposited in bank account for said parcel. Withdrawals from said bank accounts may be made only upon the joint signatures of one of the Sellers and a representative of the Buyer. The funds deposited in each said bank account shall be withdrawn one-sixth to Sellers and five-sixths to Buyer with separate checks to each."

Certainly, if there was a vendor's lien it was dissipated as to each lot upon the sale of each 2½-acre parcel, but the trial court held that, since the attorney and president of Edwards-Town had knowledge of the agreement, indeed, had examined and analyzed its provisions and also knew that neither Paulson nor Ridley had paid for the property, 16⅔ percent of the sale price of each lot was paid to Edwards-Town as constructive trustee for Dimin and Manuele. The court relied upon Civil Code section 2223: "One who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner," and Civil Code section 2224: "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it."

Edwards-Town argues that it did not hold the 16⅔ percent of the sale price of each lot as a constructive trustee of Dimin and Manuele, because they waived their vendor's lien as to Parcel I by certifying to the California Division of Real Estate that they held no secret lien in order to get a public permit to sell subdivision land. Their argument overlooks the fact that the representation was made to the real estate commissioner in consideration of the buyer's agreement to place the money derived from the sale of the lot into a joint bank account, 16⅔ percent to be the property of the sellers. Since Edwards-Town knew this was the consideration for the release, they, in good conscience, cannot take advantage of the letter to the commissioner without paying sellers the amount agreed upon. In substance, the court held that Edwards-Town could not knowingly acquire the benefits of the services and waiver of rights of Dimin and Manuele as sellers without assuming the obligations of the buyer and the conditions and considerations pursuant to which Dimin and Manuele gave up their rights. The court concluded that Edwards-Town took an informed and calculated risk in taking a deed from Ridley, who had acquired from Paulson, neither of whom had paid Dimin and Manuele for the property.

The basic principle involved is stated in 49 California Jurisprudence, Second Edition, § 376, page 222, as follows: "Constructive trusts are creatures of equity. In dealing with them, equity will disregard mere form, and will ascertain and act on the substance of things, regarding that as done which should have been done. The determination of whether a particular transaction is unconscionable is not governed by hard and fast rules, but is committed largely to the enlightened conscience of the individual judge, subject to the revisionary action of appellate tribunals."

In his work Trusts and Trustees, Second Edition, section 471, Bogert says at page 8: " 'A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee. . . . A court of equity in decreeing a constructive trust is bound by no unyielding formula. The equity of the transaction must shape the measure of relief.' "

In the circumstances related above, we find substantial evidence to support the trial court's finding that Edwards-Town was a constructive trustee of 16⅔ percent of the sale price of the lots in Parcel II. (*Noble* v. *Noble*, 198 Cal. 129 [243 P. 439, 43 A.L.R. 1235]; *Johnson* v. *Clark*, 7 Cal.2d 529, 536 [61 P.2d 767].)

Dimin and Manuele cross-appealed upon the ground that the record would support a larger judgment in their favor. The evidence as to dam-

ages is not entirely clear; there is, however, sufficient substantial evidence to support the findings of the trial court, and we do not feel justified in upsetting it.

The judgment is affirmed.

Coakley, J., concurred.

Gargano, J., deeming himself disqualified, did not participate.

Petitions for a rehearing were deemed denied July 24, 1970, pursuant to rule 27e, California Rules of Court. The petitions of all the parties for a hearing by the Supreme Court were denied August 19, 1970.