CHoPP COMPUTER CORPORATION, INC., a British Columbia Corporation, Plaintiff–Appellant,

v.

UNITED STATES of America; Paine-Webber Incorporated, a Delaware Corporation, Defendants–Appellees.

No. 91–15991.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 20, 1992.

Decided Sept. 29, 1993.

William T. Bisset, Hughes, Hubbard & Reed, Los Angeles, CA, for plaintiff-appellant.

John D. Giffin, Keesal, Young & Logan, San Francisco, CA, Erik P. Doerring, Asst. U.S. Atty., San Francisco, CA, for defendants-appellees.

Before: CANBY, REINHARDT and LEAVY, Circuit Judges.

CANBY, Circuit Judge.

CHoPP Computer Corporation (CHoPP) appeals from the district court's summary judgment in favor of the United States and PaineWebber Incorporated (PaineWebber), in CHoPP's action for damages arising from an alleged wrongful levy of funds contained in a PaineWebber account. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

I

Alex Laurins, a former investment promoter, controlled the PaineWebber account. The competing claims to that account arose from separate actions that CHoPP and the United States had pursued against Laurins.

CHoPP sued Laurins and others in 1986, contending that they had engaged in a scheme to disparage CHoPP and thereby drive down the price of CHoPP's stock, so that Laurins and others could profit from short sales of that stock. CHoPP sought to recover profits from the short sale of its stock, wherever found, that resulted from the tortious disparagement. CHoPP obtained a preliminary injunction from the Superior Court for the City and County of San Francisco. That injunction provided, in relevant part:

> A. Pending final resolution of this action, defendants are hereby enjoined from doing any of the following acts:
>
>    . . . .
>
> 3. Withdrawing or transferring, directly or indirectly, any proceeds of any "short" sale of CHoPP stock.

*CHoPP Computer Corp. v. Laurins,* No. 862163, slip. op. at 2 (Cal.Sup.Ct. Aug. 25, 1986) (preliminary injunction). Neither the United States nor PaineWebber was a party to CHoPP's state court action.

Meanwhile, as CHoPP's suit against Laurins was pending, the United States had launched a tax investigation against one of

Laurins' alter ego companies.[1] Laurins' continuing failure to comply with a discovery order of the federal court resulted in a penalty of $444,000, which the United States reduced to judgment. Subsequently, Laurins was convicted in federal court of obstruction of justice and criminal contempt, and was fined $250,000 (and sentenced to a prison term).[2]

The United States then obtained two writs of execution to collect the judgment and fine, which together totalled $694,000. The Government learned of the PaineWebber account that Laurins controlled, and it served the broker with the writs. On February 17, 1990, CHoPP notified the United States of the state court injunction freezing Laurins' short-sale proceeds. The PaineWebber account contained short-sale positions. Paine-Webber notified the United States that it would not cooperate in the levy unless the United States obtained a court order requiring PaineWebber to disburse the money. The Government obtained the order from the federal district court (without informing that court of the existence of the injunction), and PaineWebber delivered $694,000 from the account to the government.

In March 1990, CHoPP submitted an administrative claim for $694,000 under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b) (1988). The Attorney General denied CHoPP's claim in August of that year.

Then, in October 1990, after a jury trial, CHoPP and a coplaintiff obtained a judgment in excess of $29 million against the defendants in the state court action. *See CHoPP Computer Corp. v. Laurins,* No. 862163, slip. op. at 2 (Cal.Sup.Ct. Oct. 25, 1990) (final judgment).[3] The superior court judgment provided:

> 3. Effective as of the dates of the transactions, a constructive trust is imposed on all profits from any transaction in CHoPP stock by, or on behalf of, for the benefit of, or in the name of any Defendant.
>
> 3. [sic] The preliminary injunction entered by the Court of August 25, 1986, is hereby made permanent, except that PaineWebber Inc. is hereby directed to pay forthwith to the order of the Plaintiffs the entire contents of [the] [a]ccount ... previously frozen by the Court's preliminary injunction.

*Id.,* slip. op. at 2–3. Pursuant to this judgment, PaineWebber delivered to CHoPP approximately $263,000 that remained in the account.

CHoPP then brought this action against the Government and PaineWebber in the United States District Court for the Northern District of California. CHoPP averred that it had a prior claim to the PaineWebber account. It alleged that the Government's levy and retention of the funds were conversions under California law and the FTCA. It further alleged that PaineWebber's acquiescence in the levy was a conversion. CHoPP also claimed that each defendant had violated the preliminary injunction. The district court granted the defendants' motions for summary judgment and denied CHoPP's cross-motion for summary judgment.

We review summary judgments de novo. *Jones v. Union Pac. R.R.,* 968 F.2d 937, 940 (9th Cir.1992). In this case there are no disputed material facts. The United States and PaineWebber each knew of the preliminary injunction at the time of the levy. The United States concedes that it refused to return the levied funds to CHoPP after the state court's final judgment had been entered. We therefore ask only whether the district court correctly applied the relevant substantive law. *See Federal Deposit Ins. Corp. v. O'Melveny & Meyers,* 969 F.2d 744, 747 (9th Cir.1992).

---

1. The alter ego company was Gold Depository & Trust Company.

2. We affirmed his convictions. *See United States v. Laurins,* 857 F.2d 529 (9th Cir.1988), *cert. denied,* 492 U.S. 906, 109 S.Ct. 3215, 106 L.Ed.2d 565 (1989).

3. Laurins was in bankruptcy at this time, and the Superior Court had severed CHoPP's claims against him from the rest of the case. However, the nominal owner of the PaineWebber account, Laurins' Co–Op International Trust, remained subject to the final judgment.

## II

■ California provides the relevant substantive law in this case. That state permits recovery on a conversion theory either for the wrongful taking or for the wrongful retention of property. *See Edwards v. Jenkins,* 214 Cal. 713, 7 P.2d 702, 705 (1932). In order to maintain an action for conversion, CHoPP must show that it had title to or a right to possess the funds in the PaineWebber account. *Moore v. Regents of the Univ. of Cal.,* 51 Cal.3d 120, 271 Cal.Rptr. 146, 155, 793 P.2d 479, 488 (1990), *cert. denied,* 499 U.S. 936, 111 S.Ct. 1388, 113 L.Ed.2d 444 (1991); *Baldwin v. Marina City Properties, Inc.,* 79 Cal.App.3d 393, 145 Cal. Rptr. 406, 416 (1978). CHoPP's interest must have existed, if at all, at the time of the levy or at the time that CHoPP demanded return of the funds after entry of the final judgment in state court.

### A

■ We pause to consider whether Congress has waived the sovereign immunity of the United States for a conversion, as California law defines that tort. The FTCA subjects the United States to monetary liability for

> [a] loss of property ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b) (1988). The United States contends here that because California views a conversion as a strict liability tort, *e.g., Moore,* 271 Cal.Rptr. at 161, 793 P.2d at 494 & n. 38, CHoPP's conversion claim is beyond the scope of the FTCA. We disagree.

This Circuit has declined previously to address the Government's strict liability argument. *Gardiner Mfg. Co. v. United States,* 479 F.2d 39, 41 n. 2 (9th Cir.1973).[4] A recent district court opinion, however, squarely rejects the Government's position. *Nottingham, Ltd. v. United States,* 741 F.Supp. 1447, 1448–49 (C.D.Cal.1991). *Nottingham* analogizes a conversion to a trespass, which the Supreme Court has determined gives rise to FTCA liability, notwithstanding that wrongful intent is not an element of trespass. *Id.* (citing *Hatahley v. United States,* 351 U.S. 173, 181, 76 S.Ct. 745, 751, 100 L.Ed. 1065 (1956)). *Nottingham* further distinguishes a conversion from the class of torts involving ultrahazardous activities, which indisputably are beyond the scope of the FTCA. *Id.* at 1448 (distinguishing *Dalehite v. United States,* 346 U.S. 15, 44–45, 73 S.Ct. 956, 972–973, 97 L.Ed. 1427 (1953)). We adopt the well-reasoned analysis and conclusion of Judge Tashima's *Nottingham* opinion, and hold that CHoPP's conversion claim can be brought under the FTCA.

### B

■ CHoPP offers two theories to support its claim that it owned or had a right to possess the PaineWebber account at the time of the government's levy. First, CHoPP argues that the state court's final judgment collaterally estops the United States from denying CHoPP's ownership. We see no reason why that should be so. The United States was neither a party nor a privy of any party in the state court action. *See Dillard v. McKnight,* 34 Cal.2d 209, 209 P.2d 387, 391 (1949). The government sought nothing, nor was anything sought from it, in the state court action, directly or indirectly. The government levied on the PaineWebber funds independently of the state court action and prior to entry of the state judgment; the United States accordingly does not acquire the status of privy by becoming " 'one who, *after rendition of the judgment,* has acquired an interest in the subject matter affected by the judgment through or under one of the

---

4. We have recognized a conversion claim under the FTCA on an unrelated basis. *See Love v. United States,* 915 F.2d 1242, 1245–47 (9th Cir. 1989) (holding that federal loan recipients may bring a state law conversion claim to undo a foreclosure, notwithstanding their entitlement to seek recovery for breach of contract under the Tucker Act, 28 U.S.C. §§ 1346(a)(2), 1491 (1988)).

**1348**

parties.' " *Boulter v. Commercial Standard Ins. Co.,* 175 F.2d 763, 768 (9th Cir.1949) (quoting *Bernhard v. Bank of America,* 19 Cal.2d 807, 122 P.2d 892, 894 (1942) (emphasis added by *Boulter* )); *cf. In re Mellor,* 734 F.2d 1396, 1401 n. 4 (9th Cir.1984) (judgment lienholder "subject to all *prior* interests in the property") (emphasis added). The United States is not estopped by the state court judgment from denying CHoPP's title to the funds.

█ CHoPP's next argument is that it had an ownership interest in the PaineWebber account at the time of the levy by reason of the constructive trust. There is California authority that suggests that a constructive trust springs into existence at the moment a wrongful taking occurs. *See, e.g., Broder v. Conklin,* 121 Cal. 282, 53 P. 699, 702 (1898) (holding that the statute of limitation begins to run when harm arises); *Majewsky v. Empire Construction Co.,* 2 Cal.3d 478, 85 Cal. Rptr. 819, 828 n. 4, 467 P.2d 547, 556 n. 4 (1970) (Tobriner, J., dissenting) ("the imposition of a constructive trust restores title to plaintiff *ab initio*"). We do not agree, however, that cases dealing with limitations or other rights between the "trustor" and "trustee" of a constructive trust establish that the imposition of a constructive trust may, under California law, interfere with a third party's prior claim that has been reduced to judgment and levied upon.

The retroactive creation of a constructive trust is not necessarily a self-executing award of equitable title. *See* George G. Bogert and George T. Bogert, *The Law of Trusts and Trustees* Section 472 (Rev.2d ed. 1978); *cf. United States v. 92 Buena Vista Ave.,* —— U.S. ——, —— – ——, 113 S.Ct. 1126, 1135–36, 122 L.Ed.2d 469 (1993) (plurality op.) (involving the common-law relation back doctrine). There is no California law that suggests that CHoPP may rely upon a 1990 judgment to impede satisfaction in 1988 of a competing judgment that was already final. Nor did the preliminary injunction give CHoPP a prior claim. The preliminary injunction was not final, was not addressed to others than the parties, and did not purport to impose a trust on the *res* of the Paine-Webber account. Only the final state court

judgment recognized the existence of a constructive trust, and it came too late for the purpose of defeating the earlier levy of the United States.

CHoPP's view to the contrary, if adopted, would cause disruption that we conclude would not be countenanced by California law. If a retroactive creation of a constructive trust may defeat a prior and otherwise legal levy, one creditor may deter competitors from satisfying their judgments against a common debtor merely by initiating an action that seeks recognition of a constructive trust over the debtor's assets. A third party who proceeded with a levy under those circumstances could be held liable for a conversion.

California experienced a similar problem with its lis pendens procedure. In one case the state court of appeal allowed the filing of a lis pendens on a defendant's home in connection with a fraud suit seeking to impose a constructive trust on the home. *Coppinger v. Superior Court,* 134 Cal.App.3d 883, 185 Cal.Rptr. 24, 29–30 (1982). *Coppinger* has since been sharply criticized, perhaps most aptly in *Urez Corp. v. Superior Court,* 190 Cal.App.3d 1141, 235 Cal.Rtpr. 837, 842–43 (1987):

> This case differs factually from the cases we have discussed but it is most similar to *Coppinger.* It is essentially a fraud action seeking money damages with additional allegations urged to support the equitable remedies of a constructive trust or an equitable lien. Real party does not claim any ownership or possessory interest in the subject property. Rather, he seeks reinstatement or creation of a 'beneficial' interest in the property for the purpose of securing payment of money owed him under his defunct second trust deed.

> . . . .

> We conclude, therefore, that allegations of equitable remedies, even if colorable, will not support a lis pendens if, ultimately, those allegations act only as a collateral means to collect money damages. It must be borne in mind that the true purpose of the lis pendens statute is to provide notice of pending litigation and not to make plaintiffs secured creditors of defendants nor to

provide plaintiffs with additional leverage for negotiating purposes.

Even allowing for the special context of lis pendens, we view *Urez* as a clear indication that California discourages the use of equitable remedies to ward off competing prior lienholders. "Where, as here, the purpose of the constructive trust is only to secure payment of a debt, the plaintiff, like other creditors must rely upon prejudgment attachment procedures." *La Paglia v. Superior Court*, 215 Cal.App.3d 1322, 264 Cal.Rptr. 63, 68 (1989); *cf. Doyka v. Superior Court*, 233 Cal.App.3d 1134, 285 Cal.Rptr. 14, 16 (1991) (general injunction freezing defendant's assets pending litigation invalid as amounting to a prejudgment attachment without meeting requirements for attachment).

Our view intimates no characterization of the United States as an innocent transferee. As a judgment lienholder, the Government was ineligible for that status. *In re Mellor*, 734 F.2d 1396, 1401 n. 4 (9th Cir.1984). Moreover, the Government's motive is irrelevant to the success or failure of the conversion claim. *See Poggi v. Scott*, 167 Cal. 372, 139 P. 815, 816 (1914); 5 B.E. Witkin, *Summary of California Law* § 624 (9th ed. 1988) [hereafter Witkin, *Summary* ]. Rather, our view is founded in California's preference, expressed in *Urez*, 235 Cal.Rptr. at 843, that all creditors adhere to even-handed collection rules. We determine, therefore, that the imposition of a constructive trust did not give CHoPP title to the PaineWebber account at the time of the Government's levy. It follows that the United States did not commit a conversion when it levied, and PaineWebber did not commit conversion when it surrendered the funds.

## C

CHoPP crafts two theories which it argues relieves it of the burden of showing contemporaneous ownership of the account. First, CHoPP contends that the govern-ment's levy was ineffective under California Code of Civil Procedure section 700.180(b), which reaches any "levy upon property that is the subject of an action ... pending at the time of the levy." [5] Although there is no California authority interpreting section 700.-180(b), we conclude that CHoPP's state court action lies beyond the plain language of that provision. We read the phrase "property that is the subject of an action" in its commonly understood meaning: property that is the subject of an action brought to determine who has interests in it. *See, e.g., Evarts v. Jones*, 127 Cal.App.2d 623, 274 P.2d 185, 187 (1954) ("a grantee who acquires title with constructive notice of the pendency of an action to quiet title against his grantor is concluded by a judgment against the latter"). CHoPP's state court action was not one to determine ownership of the PaineWebber account, but rather one to establish Laurins' civil liability to CHoPP.

The constructive trust is only a remedy. *Stansfield v. Starkey*, 220 Cal.App.3d 59, 269 Cal.Rptr. 337, 347 (1990). While such a trust may arise in a case where the trust res *is* the subject of the action, as in a suit for specific performance of a real estate contract, that is not the case here. The state court imposed the trust as a means to assist CHoPP in recovering the damages which the jury had awarded for the tort of fraudulent disparagement. That tangential employment of the remedy did not render the PaineWebber account the "subject of an action ... pending at the time of the levy...." Cal.Civ.Proc. § 700.180(b) (1987).

The analogy to the lis pendens procedure again offers guidance. In that context, the California Court of Appeal has specified that the assertion of a constructive trust is insufficient to prevent the transfer of property that could serve as the *res* of the trust:

The issue is simply whether the action as pleaded is one that affects title or possession of the subject property.... At bottom, the "beneficial" interest real party

---

**5.** Section 700.180(a) sets out certain categories of property, none of which are involved here, that "may be levied upon pursuant to this article notwithstanding that the property levied upon is the subject of a pending action or special proceeding."

Section 700.180(b) then provides:

(b) Except as provided in subsection (a), a levy upon property that is the subject of an action or special proceeding pending at the time of levy is not effective.

claims in the subject property is for the purpose of securing a claim for money damages. In our view allegation of this interest is not an action affecting title or possession of real property.

*Urez,* 235 Cal.Rptr at 842. We find the analogy apt in this case; the subject of CHoPP's action was not the PaineWebber account.

CHoPP next attempts to rely on California case law that permits a plaintiff with title to property, but lacking a right to immediate possession, to maintain a conversion action. CHoPP relies on *Taylor v. S & M Lamp Co.,* 190 Cal.App.2d 700, 12 Cal.Rptr. 323 (1961), and *Reynolds v. Lerman,* 138 Cal.App.2d 586, 292 P.2d 559 (1956), both of which ruled that a plaintiff with title need not have a right to possession to bring a conversion claim. These cases are not of aid to CHoPP, however, because CHoPP has shown *neither* title nor a right to possession. As we have held above, CHoPP did not hold equitable title to the PaineWebber account at the time of the levy.[6]

### D

██ CHoPP responds that, even if the United States did not commit conversion when it levied upon the PaineWebber account, it did so later when it refused to yield the proceeds up to CHoPP after the state court entered its final judgment. CHoPP failed to raise this wrongful retention claim in its original pleadings. In conjunction with a motion to reconsider, CHoPP requested leave to amend to assert that claim. The district court denied the motion to reconsider, and entered summary judgment in favor of the United States, without giving explicit consideration to CHoPP's request. We interpret the district court's action as an implicit denial of the request for leave to amend. We review that denial for an abuse of discretion, but are mindful of the strong policy in favor of permitting amendment. *Texaco, Inc. v. Ponsoldt,* 939 F.2d 794, 798 (9th Cir.1991).

What we have said already makes it clear that the district court did not abuse its discretion in denying leave to amend, for the amendment to state a wrongful retention claim would have been futile. We have rejected CHoPP's contention that the constructive trust vested title retroactively, at least in a manner that would render tortious prior levies by judgment creditors. CHoPP is simply not in the position of a plaintiff who seeks return of an identifiable res wrongfully taken or wrongfully retained. *See, e.g., People v. One 1960 Ford,* 228 Cal.App.2d 571, 39 Cal.Rptr. 636, 638 (1964) (a true owner of misappropriated property · stands above a mere creditor). CHoPP sought damages for fraud, and intended to pursue, with the state court's help, the PaineWebber funds as a means of satisfying its judgment. The United States, armed with its own prior, valid judgments, pursued the same funds and got there first. There was no flaw in the United States' title when it acquired the funds, and none appears now.

██ CHoPP bears the burden of persuading us that it may bring this action. In a conversion case a "plaintiff must recover, if at all, upon the strength of his own title and not upon the weakness of his adversary...." *Lee On v. Long,* 37 Cal.2d 499, 234 P.2d 9, 12 (1951) (citation omitted), *cert. denied,* 342 U.S. 947, 72 S.Ct. 553, 96 L.Ed. 704 (1952). The constructive trust, once imposed, undoubtedly gave CHoPP "some kind of an equitable interest" in the account, *Restatement of Restitution,* § 160 cmt. a (1937), but that interest was recognized after the government had made a perfectly lawful levy on the PaineWebber account. CHoPP's late-perfected interest is too weak to overcome the present ownership and possessory interest of the United States, lawfully acquired. To hold otherwise would permit CHoPP to gain priority over a preexisting judgment creditor that had satisfied its debt by levy of execution. We are unpersuaded that California courts would sanction that result. We therefore find no abuse of discretion in the

---

**6.** CHoPP's reliance on these cases is also defeated by our finding that neither the United States nor PaineWebber was subject to, or in violation

of, the preliminary injunctions. *See infra* section III.

district court's failure to permit amendment of the complaint.

## III

CHoPP also seeks damages from the United States and PaineWebber on the ground that each violated the state court preliminary injunction. That injunction barred the transfer of funds from the PaineWebber account. The defendants maintain that they were not subject to the injunction.

■■ We consider the threshold question whether civil damages are available under California law for the disobedience of a preliminary injunction. A civil contempt proceeding is the usual method of enforcement, 6 B.E. Witkin, *California Procedure* § 321 (3d ed. 1985), but we conclude that damages also may be awarded. One California court has observed:

> In some jurisdictions, where the disobedience of an injunction has resulted in pecuniary loss or injury to the plaintiff, the court, by reason of statute, may, in imposing punishment, award an amount sufficient to indemnify him for his loss, while in others relief is given in an independent action.... But whatever the form of the proceeding for relief, the right to recover as against one who, in disobedience of the mandate of the court, violates a right sought to be protected thereby, to the damage of another, or who knowingly aids and abets such violations, is generally recognized.

*Kirby v. San Francisco Savings & Loan Soc'y*, 95 Cal.App. 757, 273 P. 609, 609–10 (1928); *see also Heinz v. Superior Court*, 42 Cal.2d 164, 266 P.2d 5, 12 (1954) (civil damages may be collected for an act otherwise in contempt).

### A

■■ CHoPP concedes that the United States was neither a party, nor a privy to a party, named in the injunction. CHoPP ar-

gues that the government is bound as a successor in interest to Laurins. We disagree. Although California recognizes the concept of corporate succession, *see* 6 Witkin, *Summary* § 320, CHoPP cites no authority which supports the idea that the act of execution renders a judgment creditor subject to an injunction that bound the judgment debtor.

### B

CHoPP concedes that PaineWebber, also, was not a party to the injunction. PaineWebber was bound, argues CHoPP, because it was Laurins' agent. An injunction binds the agent of a party named in the injunction, *Ross v. Superior Court*, 19 Cal.3d 899, 141 Cal.Rptr. 133, 138, 569 P.2d 727, 731 (1977), and a broker is ordinarily its client's agent. *See, e.g., Black v. Shearson, Hammill & Co.*, 266 Cal.App.2d 362, 72 Cal.Rptr. 157, 160 (1968) (affirming judgment against brokers who defrauded clients).

We conclude, however, that PaineWebber acted on its own authority, and not as Laurins' agent, when it released funds from Laurins' account to the United States. The broker presumably acted against its client's wishes, but its action complied with a valid levy backed up by a court order. This case therefore differs markedly from *Kirby*, the primary case in support of CHoPP's position. There, a bank released funds to a defendant named in the injunction. *Kirby*, 273 P. at 609.[7] Because PaineWebber was not bound as an agent by the injunction against Laurins, it incurred no liability for complying with the levy.[8]

## IV

The United States and PaineWebber were entitled to summary judgment. CHoPP has no viable claim against either defendant for conversion of funds or for violation of an

---

7. *Kirby* specifically addressed whether the bank could be held liable for violating an injunction on an aiding and abetting theory. *See id.* 273 P. at 610 ("it is not claimed that the defendant acted as the agent or servant of Kirby").

8. Because we determine that PaineWebber was not subject to the injunction, we do not address what effect the court order enforcing the levy could be given if it conflicted with the injunction.

injunction. The judgment of the district court is

**AFFIRMED.**

REINHARDT, Circuit Judge, dissenting:

The majority holds that the United States can step in and seize the funds in a judgment debtor's investment account, even though it knows that a state court has *already* issued a preliminary injunction against the debtor's use of those funds in another judgment creditor's favor. I believe that the majority's opinion is unwarranted in light of existing precedent. I also believe that the majority erroneously rewards the government for its improper conduct. Accordingly, I dissent.

*A. Constructive Trust.*

The majority argues that CHoPP cannot prevail on its conversion claim against the United States because CHoPP did not have ownership of the account on the date that the government seized the funds. *See* Majority Opinion, *supra*, at 1347–49 [hereinafter Maj. Op.]. The majority's argument is incorrect for the following reasons.

First, the majority errs in holding that CHoPP did not have ownership of the funds through a constructive trust. When it awarded final judgment in CHoPP's favor, the superior court imposed a constructive trust on the funds effective as of the date of the illegal stock transactions—a year and a half *before* the United States levied on the account. The judgment was not simply a retroactive award of title; it was an acknowledgement that CHoPP had equitable title to the funds *all along*. Indeed, as the majority acknowledges, a constructive trust springs into existence of its own force at the time of the commission of a fraud or mistake. *See Broder v. Conklin*, 121 Cal. 282, 53 P. 699, 701 (1898); *see also Majewsky v. Empire Construction Co.*, 2 Cal.3d 478, 85 Cal.Rptr. 819, 828 n. 4, 467 P.2d 547, 556 n. 4 (1970) (Tobriner, J., dissenting) ("[T]he imposition of a constructive trust restores title to plaintiff *ab initio*.").

Second, the majority errs in holding that "[t]here is no California law that suggests that CHoPP may rely upon a 1990 judgment to impede satisfaction in 1988 of a competing judgment that was already final." Maj. Op., *supra*, at 1348. To the contrary, it is well established under California law that a constructive trust elevates substance over form in order to achieve just results. *See, e.g., Edwards–Town, Inc. v. Dimin*, 9 Cal.App.3d 87, 87 Cal.Rptr. 726, 730–31 (1970); *Sanguinetti v. Rossen*, 12 Cal.App. 623, 107 P. 560, 562 (1906). Accordingly, the superior court's imposition of a constructive trust as of the date of Laurin's illegal transactions was valid under established state law.[1]

Third, the majority errs in concluding that CHoPP's rule would discourage collection by other creditors any time the first creditor initiates an action that may result in a constructive trust. *See* Maj.Op., *supra*, at p. 1348. The majority fails to recognize, however, that "mere initiation" is insufficient to impose a constructive trust—the first creditor must *win* final judgment in his favor before such a trust can be imposed. Accordingly, meritless claims by judgment creditors would fail, and no constructive trust would result from such actions. By contrast, worthy claims would succeed, and the first creditor to file such a claim would rightly be entitled to what he is owed. Ironically, the majority itself creates a perverse and unjust rule that punishes creditors who file their claims first (in this case, CHoPP), and rewards creditors who file their claims later (in this case, the United States).

Fourth, the majority errs in citing *Coppinger v. Superior Court*, 134 Cal.App.3d 883, 185 Cal.Rptr. 24 (1982); and *Urez Corp. v. Superior Court*, 190 Cal.App.3d 1141, 235 Cal.Rptr. 837 (1987) for the proposition that "California discourages the use of equitable remedies to ward off competing lienholders." *See* Maj.Op., *supra*, at 1348–49. Both cases are inapposite here because they deal with the special doctrine of *lis pendens*, in which notice of pending litigation against real prop-

---

1. For a more detailed discussion of why the majority's holding is unjust, see page 1353, be-    low.

erty is filed in the county recorder's office.[2] In any event, I reject the majority's argument that CHoPP's rule "ward[s] off competing lienholders." As discussed above, CHoPP's rule properly creates an incentive for creditors with meritorious claims to file their claims *first.* By contrast, the majority's rule wards off diligent creditors and rewards the lazy ones.

### B. Government Misconduct.

Even if CHoPP did not have ownership of the account at the time of the government's seizure of the funds, I would hold that the United States' misconduct excuses CHoPP from meeting the contemporaneous ownership element of a conversion claim.

The majority errs in holding that the government's levy was valid under California law. *See* Maj.Op., *supra,* at 1349–50. California law clearly establishes that a levy upon property that is the subject of an action is not effective. *See* Cal.Civ.Proc.Code § 700.-180(b) (West 1987); *cf. Custer v. McCutcheon,* 283 U.S. 514, 519, 51 S.Ct. 530, 531, 75 L.Ed. 1239 (1931) (holding that the United States is bound by state law restrictions on execution). Because the account was the subject of an existing action at the time of the government's seizure (the superior court injunction), the government's levy is ineffective.

The majority tries to distinguish § 700.-180(b) by contending that the provision only applies to suits that "determine ownership" of the subject of the action. This contention is inconsistent with the fact that CHoPP sought and obtained ownership over the illegal stock profits contained in the account. A constructive trust signifies a property interest; it is not merely a device for recovering money damages. *See, e.g., Bainbridge v. Stoner,* 16 Cal.2d 423, 106 P.2d 423, 427 (1940); *cf.* 11 B.E. Witkin, *Summary of California Law* § 142(b), at 998 (9th ed. 1990) (establishing that a beneficiary of a constructive trust has priority over the other creditors of the trustee).

In any event, barring the plaintiff's conversion suit would reward the defendant for its improper conduct. The United States' defense to the conversion claim is that it seized the account proceeds *before* CHoPP was able to obtain a final judgment establishing title to the account, thus frustrating CHoPP's ability to meet the contemporaneous ownership element of conversion. The United States only attained the chronological edge that now forms the core of the majority's opinion by levying on property that was the subject of pending litigation in violation of California law. Further, the United States levied on property with knowledge of the preliminary injunction and without notifying CHoPP of its intent to do so. We should not reward the United States for its amoral behavior by turning an illegal act into an irremediable *fait accompli.* Rather, we should hold that, since CHoPP's ultimate ownership of the property is not in doubt, the United States' wrongful seizure of the property excuses CHoPP from the need to show contemporaneous ownership in order to recover for conversion. Because there are no material factual disputes regarding the conversion theory, I would direct the district court to grant summary judgment against the United States on this ground.

### C. Right to Possession.

The majority also errs in rejecting CHoPP's argument that a right to possession over the disputed property is not necessary in order to bring a conversion claim. The majority dismisses CHoPP's argument that *Taylor v. S & M Lamp Co.,* 190 Cal.App.2d 700, 12 Cal.Rptr. 323 (1961); and *Reynolds v. Lerman,* 138 Cal.App.2d 586, 292 P.2d 559

**2.** Because notice of pending litigation against the real property is filed in a centralized location, all potential creditors have constructive notice of the action. *See* 43 Cal.Jur.3d *Lis Pendens* §§ 1–7, at 293–304 (1978). Accordingly, it is not surprising that California law discourages the use of equitable remedies (such as the imposition of a constructive trust); all creditors with legitimate claims have already been put on notice at the outset of the litigation.

By contrast, this case involves a creditor—CHoPP—who had *absolutely no notice* of the United States' intention to levy on the disputed property. *See infra* pp. 1353–54. Accordingly, the doctrine of *lis pendens* is completely inapplicable, and equitable remedies in CHoPP's favor are appropriate.

(1956), are controlling in this case. Both cases held that a plaintiff with title need not have a right to possession to bring a conversion claim.

The majority contends that *Taylor* and *Reynolds* are "not of aid" because CHoPP has shown neither "a right to possession" nor "title." *See* Maj.Op., *supra*, at 1350. This argument completely baffles me, however. First, it is illogical to require CHoPP to show "a right to possession" before it can bring its conversion claim. *Taylor* and *Reynolds* stand precisely for the proposition that the right to possession is *not necessary* in order to prevent one who wrongfully assumes dominion over property from benefitting from his own wrong. *See Taylor*, 12 Cal.Rptr. at 330; *Reynolds*, 292 P.2d at 566. To me, the majority's requirement that CHoPP must show a right to possession *before* it can prove that right to possession is not necessary seems wholly illogical. Second, CHoPP has *already* shown a right to "title" in the disputed property. Here, as in *Taylor* and *Reynolds*, it is only the *timeliness* of the plaintiff's ownership interest that is in doubt—that CHoPP ultimately obtained title to the funds is not seriously disputed by either party. The fact that the majority concludes that CHoPP did not have ownership at the time of the government's seizure of the funds does not change the fact that CHoPP ultimately obtained title to the property. Thus, it *was* demonstrated that CHoPP had a right to title. Accordingly, *Taylor* and *Reynolds* are "of aid," and CHoPP should be permitted to bring its conversion claim.

### D. Damages.

Finally, the majority errs in holding that PaineWebber, the custodian of the account, was not liable for violating the superior court's preliminary injunction. *See* Maj. Op., *supra*, at 1351–52.

A threshold question is whether civil damages are available for the violation of a preliminary injunction. I think it plain that they

are. *See, e.g., Kirby v. San Francisco Sav. & Loan Soc'y*, 95 Cal.App. 757, 273 P. 609, 610 (1928) ("[T]he right to recover as against one who, in disobedience of the mandate of the court, violates a right sought to be protected thereby, to the damage of another, or who knowingly aids and abets such violation, is generally recognized.");[3] *see also Heinz v. Superior Court*, 42 Cal.2d 164, 266 P.2d 5, 12 (1954) ("Civil damages may be collected in an ordinary civil action for an act otherwise a contempt." (internal quotes omitted)); *In Re Morris*, 194 Cal. 63, 227 P. 914, 916 (1924). Any other result would create a gap in California's comprehensive law of remedies. *See* Cal.Civ.Code § 3523 (Deering 1984) ("For every wrong there is a remedy.").

The real question is whether either of the defendants was *bound* by the preliminary injunction. Neither the U.S. nor PaineWebber was a party to the Superior Court action in which CHoPP obtained the injunction, and neither was explicitly named in the injunction. However, under California law, an injunction applies not only to the parties named in the court order but to their successors-in-interest, *agents*, employees, and those who aid and abet the injunction's violation, provided they have notice of the injunction.[4] *See, e.g., Ross v. Superior Court*, 141 Cal. Rptr. 133, 136, 569 P.2d 727, 731 (1977); *Katenkamp v. Superior Court*, 16 Cal.2d 696, 108 P.2d 1, 3 (1940); *Berger v. Superior Court*, 175 Cal. 719, 167 P. 143, 144 (1917); *Pitchess v. Superior Court*, 2 Cal.App.3d 653, 83 Cal.Rptr. 41, 43 (1969); 38 Cal.Jur.3d *Injunctions* § 94, at 607 (1977).

I am persuaded that PaineWebber was bound by the preliminary injunction because it was Laurins' agent. *See Black v. Shearson, Hammill & Co.*, 266 Cal.2d 362, 72 Cal.Rptr. 157, 160 (Ct.App.1968) (stock broker ordinarily serves his customers as an agent). The majority incorrectly contends that PaineWebber was not an agent because it "acted on its own authority" in turning

---

**3.** The majority opinion's attempt to distinguish *Kirby, see* Maj.Op., *supra*, at 1351–52, is inapplicable here. This section discusses *Kirby*'s holding as to the general availability of damages for a violation of an injunction, which is a separate question from whether PaineWebber *in fact* vio-

lated an injunction in this case. I address the latter question at pages 1354–55, below.

**4.** The United States and PaineWebber both concede that they had notice of the injunction.

over the money to the United States. Maj. Op., *supra*, at 1347. Whether PaineWebber actually exercised independent judgment in this particular instance, however, does not change the fact that PaineWebber had *general authorization* from Laurin to act on his behalf. Accordingly, PaineWebber was Laurin's agent. As Laurins' agent, PaineWebber was prohibited "from ... withdrawing or transferring, directly or indirectly, any proceeds of any 'short' sale of CHoPP stock." C.R. 1 at 9. This is so even though the injunction did not explicitly bind Laurins' agents; agents are implicitly covered. *See Ross*, 141 Cal.Rptr. at 136, 569 P.2d at 731. PaineWebber therefore violated the preliminary injunction when it transferred the funds in the Laurins account to the United States.

PaineWebber is not insulated from liability by the fact that it was under a district court order to turn the account proceeds over to the United States. When served with the United States' writs of execution, PaineWebber invited the United States to seek a court order enforcing the writs, and then made no attempt to notify the district court of the fact that the account proceeds were the subject of a preliminary injunction and an ongoing dispute in state court. Had it done so, the district court most likely would have declined to issue its order.[5] PaineWebber also failed to notify CHoPP that it had been served with writs of execution, and failed to take advantage of California's designated procedure for levying on property subject to litigation. See Cal.Civ.Proc.Code § 700.180(e) (West 1987). Thus, to the extent that PaineWebber was subject to contradictory Superior and District court orders regarding the funds, this was a problem of its own creation.[6]

Because there are no material factual issues in dispute here, I would reverse and remand with directions to enter summary judgment against PaineWebber on the preliminary injunction theory.

\* \* \*

For the above reasons, I dissent.

---

**5.** Had the Superior court litigation been brought to the attention of the district court, the district court would have realized that the United States could not lawfully levy on the Laurins account under California law. See pages 1352–53, above. It therefore would have declined to issue an order enforcing the writs of execution.

**6.** My views of the conversion and preliminary injunction claims make it unnecessary for me to reach the parties' exchange regarding the collat-

eral estoppel effect of the state court judgment. *See* Blue Brief at n. 11; Red Brief at n. 4; Gray Brief at n. 1; District Court Opinion at 5. In addition, my conclusion that the United States committed a conversion by improperly levying on the funds obviates the need to resolve CHoPP's claim that the United States committed a conversion by wrongfully *withholding* the trust corpus after the 1990 superior court judgment. *See* Maj.Op., *supra*, at 1350–51; Blue Brief at n. 10.